UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :    Chapter 11

TOTAL CONTAINMENT, INC.                        :

                    Debtor                     :    Bankruptcy No. 04-13144F
_____

GEORGE L. MILLER, Chapter 11 trustee    :

                    Plaintiff                  :

          v.                                   :

MARCEL DUTIL                                   :
THE CANAM MANAC GROUP, INC.
CANAM STEEL CORPORATION                        :
FINLOC, INC.
FINLOC CAPITAL, INC.                           :
FINLOC US, INC.
WINSTON TOWERS 1988, INC.                      :
POLYFLOW, INC.
JAY R. WRIGHT, JR.                             :
BERNARD GOUIN, and
PIERRE DESJARDINS                              :

                    Defendants                 :    Adversary No. 05-0145
_____

.............................................................

MEMORANDUM

.............................................................


          The chapter 11 trustee, George L. Miller, has commenced an adversary

proceeding asserting seven counts against 11 defendants and seeking in excess of $23

million in damages along with declaratory relief.  These 11 defendants have now filed

various motions to dismiss all seven counts, contending that the trustee has failed to state

any cause of action, and that he has failed to plead his claim of a fraudulent conveyance

with the requisite specificity.  The trustee opposes dismissal of any claim against any

defendant.  He maintains that his complaint complies with the liberal notice-pleading

requirements of the federal rules of procedure, and so he has sufficiently pled all seven

causes of action.

The parties have submitted lengthy memoranda in support of their

respective positions and have orally argued their contentions.  As these various motions to

dismiss focus upon the allegations of the complaint, I shall first summarize those

averments.

I.

A.

The trustee alleges that the debtor, a Pennsylvania corporation located in

Oaks, Pennsylvania and referred to as TCI, "was a leading manufacturer and distributor

of underground systems, products and services for the transport of petroleum and alcohol

based motor vehicle fuels from underground storage tanks to aboveground fuel

dispensers."  Complaint, ¶ 16.  At some point in 2001 and at all relevant times thereafter,

TCI's liabilities were $9 million in excess of its assets, and so the company was insolvent.

Id., ¶ 17.  Nonetheless, its assets, which included patents and other tangible and intangible

personal property, had a value estimated by the trustee to be in excess of $6.1 million.

Id., ¶¶ 19, 55.

On or about March 13, 2002, "the Defendants" incorporated PolyFlow, Inc., a Pennsylvania corporation also located in Oaks, Pennsylvania. Id., ¶¶ 12, 22. The alleged purpose of establishing PolyFlow was to "divert TCI's Pipe Production Business" from the claims of TCI's creditors. Id., ¶¶ 21-22. On July 2, 2002, TCI sold all of its assets involved in this pipe production business to PolyFlow, Inc. for $3,599,913 in cash, plus PolyFlow's assumption of approximately $2.5 million of TCI's debt to defendant Finloc, Inc. Id., ¶ 23 (see also Ex. A to the Complaint). PolyFlow obtained the funds to purchase TCI's assets from defendant Finloc US, who in turn had received about 50% of those funds from defendant Finloc Capital and roughly 50% from defendant Winston Towers 1988. In connection with the transfer of funds from Finloc US, PolyFlow conveyed 100 shares of its stock to Finloc US, Inc. Id., ¶ 23. Upon receipt of the sale proceeds from PolyFlow, TCI allegedly transferred all but $9,000 back to defendants Finloc Capital, Finloc, Inc. and Winston Towers 1988. Id.

According to the trustee's complaint, Finloc, Inc. is a Canadian corporation that owned and/or controlled both Finloc US, Inc. and Finloc Capital, Inc., and is also a minority shareholder of TCI. Complaint, ¶ 8. Finloc, Inc. is an affiliate of Canam Manac Group, Inc., another Canadian corporation that owned and controlled Canam Steel Corp., a Delaware Corporation. Id. Finloc Capital, Inc. is a shareholder of Finloc US, Inc., as is Winston Towers 1988, Inc. Finloc US, Inc. is the majority shareholder of TCI and the sole shareholder of PolyFlow. Id., ¶¶ 6-11.

Defendants Dutil, Desjardins, Gouin, and Wright were allegedly officers and/or directors of TCI, and they were knowing participants in the alleged scheme to remove the assets from TCI. Id., ¶¶ 5, 13-15, 21, 23. Mr. Dutil is also asserted to be the

3

CEO and majority shareholder of Canam Manac Group, Inc., as well as president of Winston Towers, chairperson of Finloc, Inc. and a director of Finloc US, Inc. Id., ¶ 5. It is further alleged that defendant Canam Steel Corporation "directed, aided and abetted and benefitted" from the alleged misconduct of the various defendants. Id., ¶ 7.

      Attached to the trustee's complaint as an exhibit to ¶ 23 is a flow chart illustrating the purported facts surrounding TCI's July 2, 2002 sale of assets to PolyFlow. According to the trustee, Finloc Capital transferred $1,965,000 to Finloc US, and Winston Towers transferred to Finloc US $1,785,000, for a total transfer of $3,750,000. Finloc US then purchased 100 shares of PolyFlow stock for $3,750,000. PolyFlow thereafter paid TCI $3,599,913, and assumed $2,550,000 in debt owed to Finloc, Inc., for the former's pipe production assets. After receiving these funds from PolyFlow, TCI paid $1,753,137.50 to Finloc Capital, $1,783,579.86 to Winston Towers and $53,923 to Finloc, Inc., totaling $3,590,640.36 in distributions. Id., ¶ 23, Ex. A. Although not expressly alleged, one can infer that TCI had outstanding obligations to Finloc, Inc., Finloc Capital and Winston Towers prior to July 2, 2002.[1]

      If the trustee's allegations are proven, the result of the July 2nd asset sale is as follows: TCI transferred its pipe production assets to PolyFlow and reduced its debt to Finloc, Inc. by about $2.6 million in cash and assigned debt, and reduced its debt to Winston Towers and Finloc Capital by about $3.75 million. Winston Towers exchanged a receivable due from TCI in the amount of $1.785 million either to a capital contribution

---

[1]If not, then the trustee would have complained that TCI transferred funds to these three entities without consideration. Although he does raise the issue of fraudulent conveyance, the trustee does so in the context of the totality of the transfers associated with the sale of TCI's pipe production assets, rather than focusing upon the transfer of the proceeds to non-creditors.

or a debt due in virtually the same amount from Finloc US.  Finloc Capital exchanged its

$1.965 million receivable due from TCI again either for a capital contribution or a debt in

that amount due from Finloc US.

The trustee alleges that these sale and payment transactions "had no

legitimate purpose or benefit to TCI,"  Complaint, ¶ 23, and were undertaken to keep

TCI's pipe production assets from recovery by the debtor's creditors and under the

control of the defendants.  Id., ¶ 21.  The trustee further asserts in his complaint that the

"Defendants structured a relationship in which they kept TCI going to mislead creditors

into believing that TCI . . . was continuing as a going concern. . . ."  Id., ¶ 25.  The trustee

also contends that the "Defendants diverted more than $1 Million from TCI . . . to

PolyFlow" and that the debtor's insolvency increased by more than $17 million as a result

of the alleged transfers and continuation of TCI's business.  Id., ¶¶ 27(f), 32.

Finally, the trustee avers that the individual defendants wrongfully caused

TCI to fail to defend against lawsuits brought by Murphy Oil USA, Inc. and PISCES

OPW, Inc., causing damages in excess of $5 million.  Id., ¶¶ 35-46.


B.


The trustee's first claim is that all defendants breached their fiduciary duties

to TCI, subjecting them to damages.  His second claim is that all defendants were

participants in a fraudulent conveyance of TCI's assets with the July 2, 2002 sale and

transfers of proceeds, warranting liability of more than $6.1 million.  The trustee's third

claim is that defendant PolyFlow be declared the successor in liability and assets as to all

current creditors of TCI.  The trustee's fourth and fifth claims allege that the individual

defendants are liable for negligence as well as breaches of fiduciary duty in connection

with the two judgments entered against TCI in the Murphy Oil and PISCES litigations.

The trustee's sixth claim is asserted against all defendants for "deepening

[the] insolvency" of TCI.  And the seventh and final claim, also against all defendants,

seeks a declaration that defendants' conduct justifies the disallowance or subordination of

all claims they may assert against TCI.

## II.

As mentioned earlier, the defendants have sought to dismiss each count of

the chapter 7 trustee's complaint for failure to state a cause of action under Fed. R. Bankr.

P. 7012.  Federal Rule of Bankruptcy Procedure 7012(b) incorporates Fed. R. Civ. P.

12(b)-(h).  It is well understood that in order to dismiss a claim for failure to state a cause

of action under Rule 12(b)(6), the claim should not be dismissed unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of that claim which would

entitle him to relief.  E.g., Conley v. Gibson, 355 U.S. 41, 45 (1957).  A trial court must

accept as true all of the well-pleaded facts alleged in the complaint and any reasonable

inferences therefrom.  Scheuer v. Rhodes, 416 U.S. 232 (1974); Conley v. Gibson.

> A motion to dismiss pursuant to Rule 12(b)(6) may be granted
> only if, accepting all well pleaded allegations in the complaint
> as true, and viewing them in the light most favorable to
> plaintiff, plaintiff is not entitled to relief.  Bartholomew v.
> Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).  "The issue is not
> whether a plaintiff will ultimately prevail but whether the
> claimant is entitled to offer evidence to support the claims."
> Scheuer v. Rhodes, 416 U.S. 232, 236 . . . (1974).

In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1420 (3d Cir. 1997).

In determining whether the trustee in this proceeding has stated a cause of action, I note that the procedural rules, Fed. R. Bankr. P. 7008 (incorporating Fed. R. Civ. P. 8), require only "'notice' pleading, rather than detailed fact pleading." 2 Moore's Federal Practice, § 12.34[1][b], at 12-60 (3d ed. 1999). Accordingly, a plaintiff is not required to plead each and every element of every claim with "precision." Rose v. Bartle, 871 F.2d 331, 356 (3d Cir. 1989); accord In re Tower Air, Inc., 416 F.3d 229, 237 (3d Cir. 2005); Bonsall Village, Inc. v. Patterson, 1990 WL 139383, at *7 (E.D. Pa. 1990); Atlass v. Texas Air Corp., 1989 WL 51724, at *5 (E.D. Pa. 1989).

When alleging fraud, however, Federal Civil Rule of Procedure 9 (incorporated by Fed. R. Bankr. P. 7009), requires that a plaintiff expressly plead the facts surrounding each and every element of the cause of action "with particularity." Fed. R. Civ. P. 9. See Feldman v. Trust Co. Bank, 1993 WL 300136, at *3 (E.D. Pa. 1993) ("Combining the liberal requirements of notice pleading with the more demanding ones required for fraud, the court concludes plaintiff need not plead all the elements necessary to establish his causes of action, but where he makes allegations of fraud, those allegations must be pleaded with greater particularity.").

Nonetheless, in construing Fed. R. Civ. P. 9(b), a leading commentator explained that: "While the purpose of Rule 9(b) is to provide detailed notice of the circumstances constituting fraud, each and every alleged misrepresentation need not appear in the pleadings." 2 Moore's Federal Practice, ¶ 9.03[1][a] at 9-17 (3d ed. 1999) (footnote omitted). The Third Circuit Court of Appeals echoes this general requirement:

> [Rule](9)(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the "precise misconduct with which they are charged, and to safeguard defendants against spurious charges" of fraud. . . . The first sentence of Rule 9(b) requires the identification of the elements of the fraud claim. . . . Nonetheless, focusing exclusively on the particularity requirement is "too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules."

Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (quoting, respectively, Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984), and Wright & Miller, 5 Federal Practice and Procedure, § 1298, at 407 (1969)).

Indeed, in Seville, the Court of Appeals noted further that "allegations of 'date, place or time' fulfill these [particularity] functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Seville Industrial Machinery Corp., 742 F.2d at 791.[2]

The requirement of pleading fraud with particularity is tempered not only by a flexible approach to the rules of federal civil procedure, Craftmatic Securities Litigation v. Kraftsow, 890 F.2d at 645-46 (remedy for failing to conform with Rule 9(b) is to allow amendment of the complaint to provide greater specificity, pursuant to Fed. R. Civ. P.

---

[2]Fed. R. Civ. P. 84 refers to an "Appendix of Forms" accompanying the rules of civil procedure which are intended to demonstrate "the simplicity and brevity" which the rules of procedure "contemplate." See also Swierkiewicz v. Sorema, 534 U.S. 506, 513 n.4 (2002) (referring favorably to the official forms as providing a permissible example of the pleading requirements imposed by Rule 8); In re Tower Air, Inc., 416 F.3d at 237 (analyzing Official Form 9). Official Form 13 provides an example of a simple, four-paragraph complaint that seeks to set aside an intentional fraudulent conveyance.

8

15); see District Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986), but also in those circumstances "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." Northwestern Human Services, Inc. v. Panaccio, 2004 WL 2166293, at *8 (E.D. Pa. 2004).

Indeed, flexibility in construing the particularity requirement of Rule 9 is particularly apt when a fraud claim is brought by a bankruptcy trustee. The trustee will have no first-hand knowledge of the prepetition acts that gave rise to the alleged fraud, and may or may not receive the cooperation of the debtor in this regard. See Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 277 B.R. 20, 36-37 (S.D.N.Y. 2002); In re Sverica Acquisition Corp., Inc., 179 B.R. 457, 463 (Bankr. E.D. Pa. 1995); In re Harry Levin, Inc., 175 B.R. 560, 567-68 (Bankr. E.D. Pa. 1994); 10 Collier on Bankruptcy, ¶ 7009.03, at 7009-4 (15th ed. rev. 2005).

Finally, even if a complaint is defective in failing to sufficiently plead a claim, leave to amend, rather than dismissal, is often appropriate. "[U]nless the facts alleged in the complaint clearly show that the plaintiff has no legitimate claim, courts ordinarily will allow the plaintiff leave to amend the complaint." 2 Moore's Federal Practice, § 12.34[5] at 12-76.1 (3d ed. 1999). However, where repleading could not correct the defects in a party's claim, a court should not grant leave to replead. See e.g., Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); Peterson v. Philadelphia Stock Exchange, 717 F. Supp. 332, 337 (E.D. Pa. 1989); see generally Mosler v. M/K Ventures Int'l. Inc., 103 F.R.D. 385 (N.D.

9

Ill. 1984); see also Massarsky v. General Motors Corp, 706 F.2d 111, 125 (3d Cir.), cert.

denied, 464 U.S. 937 (1983); Sarfaty v. Nowak, 369 F.2d 256, 259 (7th Cir. 1966), cert.

denied, 387 U.S. 909 (1967) (Rule 15(a) does not require a court to do a futile thing).


III.


With these principles in mind, I now turn to the defendants' challenges to

the first of the seven counts asserted by the plaintiff/trustee.

In Count I of his complaint, the trustee alleges that all of the defendants

breached a fiduciary duty to TCI and its creditors in "orchestrating and effectuating the

July 2 Transfers[.]"  Complaint, ¶ 48.  As discussed above, by virtue of those transfers

TCI sold its pipe production assets to defendant PolyFlow and ended up with a reduction

of outstanding debt to certain Finloc entities.

The individual and corporate defendants contend in their dismissal motions

that the trustee's complaint lacks any specific allegations establishing their fiduciary duty

owed to TCI.  Further, even if a fiduciary duty did exist, the defendants maintain that the

trustee failed to allege how their duty was breached.  Some defendants also argue that

they are insulated from liability for any decisions they made involving TCI's assets by

virtue of the "business judgment rule."

In response, the trustee asserts that the individual defendants are alleged in

the complaint to be officers and directors of TCI as of July 2002.  These officers and

directors, the trustee contends, along with Finloc US, Inc. and Finloc, Inc.—the latter two

corporations as the only shareholders of TCI—stood in a fiduciary capacity to the debtor

and its unsecured creditors, and breached their duties when "they transferred the Debtor's

assets to PolyFlow, for their own use and for little or no consideration, at a time when

TCI was insolvent, and then artificially extended the life of TCI to shield the fruits of

their illicit transfer."  Trustee's Memorandum, at 9.

As concerns Finloc Capital, Winston Towers, PolyFlow and the Canam

Defendants, he posits that those defendants are also liable "as either affiliates, insiders of

affiliates, friendly creditors, persons in control of the Debtor and entities 'whose

relationship with a debtor is sufficiently close that any transactions between them ought to

be subjected to closer scrutiny.'"  Trustee's Memorandum, at 13.[3]  In so arguing, the

trustee refers to 11 U.S.C. § 101 for the Bankruptcy Code's definition of "insider."

Additionally, the trustee asserts that those defendants who are not fiduciaries in their own

right can be held liable "if they aid[ed] and abet[ted] others to breach fiduciary duties."

Id., at 14.  Thus, defendant Canam Steel Corporation is alleged to have "directed, aided

and abetted and benefitted" from the actions of the other defendants.  Complaint, ¶ 7.


A.


TCI is alleged to be a Pennsylvania corporation whose principal place of

business was located in Oaks, Pennsylvania.  Defendant PolyFlow is also a Pennsylvania

corporation located in Oaks, Pennsylvania.  In considering the validity of the trustee's

breach of fiduciary duty claim, all parties rely upon Pennsylvania law.  See generally In re

---

[3]Quoting In re Pittsburgh Cut Flower Co., Inc., 124 B.R. 451, 459-60 (Bankr.
W.D. Pa. 1991).

11

<u>Tower Air, Inc.</u> (a bankruptcy trustee's breach of fiduciary duty claim regarding a Delaware corporation involved consideration of Delaware law).

Pennsylvania's Corporations and Unincorporated Associations law establishes a fiduciary duty owed by directors and officers to their corporation in the following terms:

(a) Directors.–A director of a domestic corporation *shall stand in a fiduciary relation* to the corporation *and shall perform* his duties as a director, including his duties as a member of any committee of the board upon which he may serve, *in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.* In performing his duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

(1) One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.

(2) Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.

(3) A committee of the board upon which he does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

(b) Effect of actual knowledge.–A director shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause his reliance to be unwarranted.

(c) Officers.–Except as otherwise provided in the articles, an officer *shall perform his duties as an officer in good faith, in*

12

> *a manner he reasonably believes to be in the best interests of*
> *the corporation and with such care, including reasonable*
> *inquiry, skill and diligence, as a person of ordinary prudence*
> *would use under similar circumstances.* A person who so
> performs his duties shall not be liable by reason of having
> been an officer of the corporation.

15 Pa. C.S.A. § 512 (emphasis added).  See also 15 Pa. C.S.A. § 1712.[4]

Thus, officers and directors of TCI are considered fiduciaries under

Pennsylvania law.  Moreover, in general, the standard used to determine whether an

officer or director breached his or her fiduciary duty is whether he or she performed "his

or her duties in good faith and in a manner reasonably believed to be in the best interest of

the corporation.  The director must utilize such care, skill and diligence as would a person

of ordinary intelligence under similar circumstances."  In re Forman Enterprises, Inc., 281

B.R. 600, 610 (Bankr. W.D. Pa. 2002).  "This duty of loyalty obligate[s] them to devote

themselves to the affairs of the corporation with a view towards promoting the interests of

the corporation."  In re Insulfoams, Inc., 184 B.R. 694, 707 (Bankr. W.D. Pa. 1995).

Where a company becomes insolvent, the fiduciary duty owed by corporate

officers and directors shifts to the company's creditors.  See, e.g., Voest-Alpine Trading

USA v. Vantage Steel Corp., 919 F.2d 206, 217 n. 25 (3d Cir. 1990) (under Pennsylvania

law, individuals "breached their fiduciary duty owing to [the corporation] and thus to [the

corporation's] creditors when they participated in the fraudulent conveyance of [the

corporation's] assets . . . for less than full consideration" while the corporation was

insolvent); Brown v. Presbyterian Ministers Fund, 484 F.2d 998, 1005 (3d Cir. 1973)

---

[4]Section 1712 is identical to section 512 except for the substitution of "business
corporation" for "domestic corporation."  Pennsylvania's Business Corporations law provides
that unless otherwise provided, a business corporation shall mean a domestic corporation for
profit.  15 Pa. C.S.A. § 1102.

("[a]s an officer, director, and principal stockholder of an insolvent corporation . . . [the defendant] was duty bound to act 'with absolute fidelity to both creditors and stockholders'") (quoting <u>Drury v. Cross</u>, 74 U.S. 299, 302 (1869)); <u>Sicardi v. Keystone Oil Co.</u>, 149 Pa. 148, 24 A. 163, 164 (1892); <u>see also</u> <u>Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.</u>, 296 F.3d 164, 173 (3d Cir. 2002) (under New Jersey law, "[o]nce a corporation becomes insolvent, however, the directors assume a fiduciary or 'quasi-trust' duty to the corporation's creditors. . . .  In this quasi-trust relationship, 'officers and directors cannot prefer one creditor over another, and they have a special duty not to prefer themselves.'") (quoting <u>In re Stevens</u>, 476 F. Supp. 147, 153 n.5 (D.N.J. 1979)).

Though normally shareholders do not owe a fiduciary duty to a corporation, <u>see</u> <u>Enterra Corp. v. SGS Associates</u>, 600 F. Supp. 678, 685 (E.D. Pa. 1985) (noting that it is the directors, not the shareholders, who manage the business affairs of the corporation), dominant or controlling shareholders may also owe a fiduciary duty.  <u>See</u> <u>Pepper v. Litton</u>, 308 U.S. 295, 306 (1939) ("[Directors' and dominant or controlling shareholders'] dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.") (citing <u>Geddes v. Anaconda Copper Mining Co.</u>, 254 U.S. 590, 599 (1921)); <u>In re Athos Steel and Aluminum, Inc.</u>, 71 B.R. 525, 540 (Bankr. E.D. Pa. 1987) (majority shareholder has duty to the corporation and the minority shareholders if it "dominates the board of directors and controls the corporation.").  When a corporation is insolvent, the

14

fiduciary duty of the controlling shareholders arises in favor of corporate creditors.

Travelers Casualty and Surety Co. v. Irex Corp., 2002 WL 32351176, at *3 (E.D. Pa.

2002):

> Cases interpreting Pennsylvania law hold that a controlling
> shareholder is a fiduciary of the corporation as are corporate
> officers; cases further hold that a fiduciary relationship
> develops between a controlling shareholder and creditors of
> the corporation, as it does between officers of the corporation
> and creditors of the corporation, at the point the corporation
> becomes insolvent.

see also Dexia Credit Local v. Rogan, 2003 WL 22349111, at *7 (N.D. Ill. 2003) (same

for Illinois law).[5]

Once a fiduciary duty is imposed—e.g., on a corporate director—"[t]he test

for liability for breach of fiduciary duty is whether a director was unjustly enriched by his

or her actions."  In re Forman Enterprises, 281 B.R. at 610; see also In re Insulfoams,

Inc., 184 B.R. at 708; Seaboard Industries, Inc. v. Monaco, 276 A.2d 305, 309 (Pa. 1971)

(test is whether officer or director has unjustly gained enrichment).  However, the benefit

to the fiduciary that gives rise to the breach may be indirect.

Thus, in In re Specialty Tape Corp., the court held that two former officer-

directors of the debtor/corporation had breached their fiduciary duty to the debtor when

--------

[5]The common law also provides a standard for imposing a fiduciary duty on a
person or entity.  One can be considered a fiduciary where "one person has reposed a special
confidence in another to the extent that the parties do not deal with each other on equal terms,
either because of an overmastering dominance on one side or weakness, dependence or justifiable
trust, on the other."  In re Johnson, 292 B.R. 821, 828 (Bankr. E.D. Pa. 2003) (citing Destefano
& Associates, Inc. v. Cohen, 2002 WL 1472340, at *3 (Pa. Ct. Com. Pl. May 23, 2002), quoting
Commonwealth Dept. of Transp. v. E-Z Parks, Inc., 153 Pa. Commw. 258, 268, 620 A.2d 712,
717 (1993)); see also Lichtman v. Taufer, 2004 WL 1632574, at *7 (Pa. Com. Pl. Jul. 13, 2004)
(same).  I do not understand the plaintiff to argue that this common law standard is applicable to
any of these defendants on the facts alleged.

they transferred the debtor's assets, including equipment that deprived the debtor from servicing its customers and deriving income, to a corporation of which they were also officers and directors. In re Specialty Tape Corp., 132 B.R. 297, 301 (Bankr. W.D. Pa. 1991). "[T]he clandestine sale of debtor's assets and the loss of its customers effectively put debtor out of business and was accomplished at the expense of other shareholders." Id., 132 B.R. at 301. Finding that the defendants were unjustly enriched by the transfer of assets, the court awarded the plaintiffs an amount estimated to be the profits lost as a result of the breach. Id.

Other decisions have rejected the need for even an indirect benefit to the fiduciary "since a contrary ruling would leave a corporation without recourse for injuries caused by directors who violate their duty of care to the corporation causing injury without any measurable benefit to themselves." In re Spree.com, 2001 WL 1518242, at *8 (Bankr. E.D. Pa. Nov. 2, 2001) (citing Selheimer v. Manganese Corp. of America, 224 A.2d 634 (Pa. 1966)).

B.

In his complaint, the trustee has alleged that TCI was insolvent as of July 2002, that the individual defendants were all officers or directors of TCI, and that Finloc, US was the controlling shareholder of the debtor corporation. In addition, the trustee asserts that the minority shareholder of TCI, Finloc, Inc., actually "owned and/or controlled" the majority shareholder, Finloc US. Complaint, ¶ 8. If these allegations are proven true, then these defendants could hold a fiduciary duty to the creditors of TCI

16

while TCI was insolvent. See Kearney v. Jandernoa, 979 F. Supp. 576, 579 (W.D. Mich. 1997) ("If a minority shareholder exercises actual domination and control over the corporation's business affairs, then the minority shareholder is deemed to be a controlling shareholder, and held to a fiduciary standard.") (and cases cited).

The trustee further avers that the July 2002 transactions were undertaken "to keep TCI's assets and property away from the claims of TCI's creditors" and that the transfer to PolyFlow was intended to permit the continued control of these assets, away from the reach of TCI's creditors. Complaint, ¶¶ 21-22. The trustee contends that after the July 2002 transactions were completed, TCI "was stripped of its most valuable assets and received virtually nothing in return." Id., ¶ 24.

If these allegations were proven at trial, the trustee might recover from the fiduciary defendants for breach of their duty. See Voest-Alpine Trading USA Corp. v. Vantage Steel Corp., 919 F.2d at 217 n.25. Moreover, this claim is sufficiently pled as to afford these fiduciary defendants the fair opportunity to defend themselves at trial. See Blue Line Coal Co., Inc. v. Equibank, 683 F. Supp. 493, 496-97 (E.D. Pa. 1988); see generally CH & H Pennsylvania Properties, Inc. v. Heffernan, 2003 WL 22006799, at *6 (E.D. Pa. 2003).

Accordingly, it would seem that the motion to dismiss Count I filed by defendants Messrs. Dutil, Wright, Gouin and Desjardins, plus corporate defendants Finloc US and Finloc, Inc., must be denied. Whether the trustee will be able to prove at trial the allegations made is at present unknown. But he should have the opportunity and the defendants have sufficient notice to mount their defense.

17

The individual and shareholder defendants nonetheless contend that their actions are insulated from challenge by the Pennsylvania business judgment rule. They suggest in their memorandum that their actions in July 2002 were supported by an outside accounting firm and perhaps by independent directors, and had the salutary result of reducing TCI's debt.

In general, "the business judgment rule reflects a policy of judicial noninterference with business decisions of corporate managers, presuming that they pursue the best interests of their corporations, insulating such managers from second-guessing or liability for their business decisions in the absence of fraud or self-dealing or other misconduct or malfeasance." Cuker v. Mikalauskas, 692 A.2d 1042, 1046 (Pa. 1997). Thus,

> the business judgment rule should insulate officers and directors from judicial intervention in the absence of fraud or self-dealing, if challenged decisions were within the scope of the directors' authority, if they exercised reasonable diligence, and if they honestly and rationally believed their decisions were in the best interests of the company. . . .
>
> Factors bearing on the board's decision will include whether the board . . . was disinterested, whether it was assisted by counsel, whether it prepared a written report, whether it was independent, whether it conducted an adequate investigation, and whether it rationally believed its decision was in the best interests of the corporation (i.e., acted in good faith).

Id.

Without now suggesting that the business judgment rule is or is not applicable to the issue of defendants' liability, I conclude that the individual defendants' reliance on this doctrine cannot presently be evaluated in the context of these motions to dismiss.

18

Generally, as an affirmative defense, the business judgment rule cannot be used to support dismissal under Rule 12(b)(6). Rather, defendants can only assert such an affirmative defense at trial or, if no material facts are in dispute, in connection with summary judgment. See, e.g., Resolution Trust Corp. v. Fiala, 870 F. Supp. 962, 971 (E.D. Mo. 1994). There is, however, an exception to this constraint. An affirmative defense, such as the business judgment rule, can be considered in the context of a motion to dismiss when its validity is clear from the facts asserted by the plaintiff in his complaint. See In re Tower Air, Inc., 416 F.3d at 238; Fleet Nat. Bank v. Boyle, 2005 WL 2455673, at *16 (E.D. Pa. 2005); see generally ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense like the statute of frauds appears on its face.").

In this proceeding, however, I cannot conclude from the facts alleged by the trustee in his complaint that the business judgment rule would insulate the fiduciary defendants from liability. Not only do the defendants make factual assertions outside of those raised in the complaint, but the trustee alleges that these defendants directly or indirectly benefitted from the actions of which the trustee now complains.

To overcome the presumption of the business judgment rule, a plaintiff must sufficiently plead that the directors acted in fraud, bad faith or self-interest. Keyser v. Commonwealth Nat'l Financial Corp., 644 F. Supp. 1130, 1145-46 (M.D. Pa. 1986) (citing Enterra v. SGS Associates, 600 F. Supp. at 686).[6] "Put another way, courts will

---

[6]The Pennsylvania Business Corporation Law suggests that a breach of fiduciary duty renders the business judgment rule inapplicable. See 15 Pa. C.S.A. § 1715:

(d) Presumption.–Absent breach of fiduciary duty, lack of good

(continued...)

not disturb the judgment of a board of directors if it can be attributed to any rational

business purpose." In re Athos Steel and Aluminum, Inc., 71 B.R. at 541 (citing Matter

of Reading Co., 711 F.2d 509, 517 (3d Cir. 1983)).  The trustee, however, has pled in this

litigation that TCI's fiduciaries acted with self-interest, bad faith and fraud in connection

with the July 2002 sale of assets to PolyFlow.

> "Where . . . there is a prima facie showing that the directors or majority

shareholders have a self-interest in a particular corporate transaction, the business

judgment rule does not apply and the burden shifts to the directors to demonstrate that the

transaction is intrinsically fair."  In re Athos Steel and Aluminum, Inc., 71 B.R. at 541

(also citing Burton v. Exton, 583 F. Supp. 405, 415 (S.D.N.Y. 1984): "[W]hen the

stockholders or directors, who control the making of a transaction and its terms, are on

both sides, then the presumption and deference to sound business judgment are no longer

present. . . . Intrinsic fairness is then the criterion.")).[7]

---

[6](...continued)
faith or self-dealing, any act as the board of directors, a committee
of the board or an individual director shall be presumed to be in the
best interests of the corporation. . . .

[7]An early example of this principle of Pennsylvania law is found in Hill v.
Standard Telephone Manufacturing Co., 198 Pa. 446 (1901), wherein the Supreme Court
affirmed the following holding:

> [W]here an officer or director, who is a creditor of an insolvent
> corporation, manages to have his claim preferred over those of
> other creditors whose debts are equally meritorious, the
> presumption of equity is that he has taken an unfair advantage of
> his special knowledge and special power to save himself to their
> prejudice; and, if he would escape the consequence of this
> presumption, and hold his preference, he must rebut it by showing
> that the circumstances of the transaction make it just and right that

(continued...)

"The test for determining the fairness of any agreement or transaction between a corporation and one of its officers, directors and/or dominant or controlling shareholders is whether 'the transaction carries the earmarks of an arm's length bargain.'" Main, Inc. v. Blatstein, 1999 WL 424296, at *13 (E.D. Pa. Jun. 23, 1999) (quoting Pepper v. Litton, 308 U.S. at 306-07).[8]

---

[7](...continued)
he should be paid before the other creditors.
See also Pangburn v. American Vault, Safe & Lock Co., 205 Pa. 83, 92 (1903).

[8]Pennsylvania's Business Corporation Law gives specific conditions where an officer or director will not be liable when a corporation transacts with a director or officer or with a corporation in which one or more of its directors or officers are directors or officers or have a financial or other interest.

§ 1728. Interested directors or officers; quorum
 (a) General rule.–A contract or transaction between a business corporation and one or more of its directors or officers or between a business corporation and another domestic or foreign corporation for profit or not-for-profit, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his or their votes are counted for that purpose, if:

(1) the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3) the contract or transaction is fair as to the corporation as of the

(continued...)

There is no basis, considering only the allegations raised by the complaint, with which I can now determine that the business judgment rule should or should not apply.  Compare In re Tower Air, Inc., 416 F.3d at 239 (business judgment rule required dismissal of breach of fiduciary duty claim when the complaint itself alleges "an ostensibly legitimate business purpose for an allegedly egregious decision.").  Thus, this affirmative defense must be developed after discovery.[9]

---

[8](...continued)
time it is authorized, approved or ratified by the board of directors or the shareholders.

15 Pa. C.S.A. § 1728.

[9]Certain defendants have attached a copy of TCI's 2001 annual report as an appendix to their memorandum seeking dismissal.  They contend that a review of this report will support the application of the business judgment rule.  Furthermore, they argue that this report can be considered in connection with their motion to dismiss, citing Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002).  In Pryor, the Circuit Court explained:

> "[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. *** Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court."

(quoting 62 Fed. Proc., L. Ed. § 62:508); see also Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 196-97 (3d Cir. 1993).

In this proceeding, the trustee's complaint makes no reference to this annual report.  Instead, he refers only to a "going concern" advisory issued by Grant Thornton, LLP.  Complaint, ¶ 20.  Moreover, even if this advisory were included as a small portion of the annual report, as asserted by the defendants, neither the annual report nor the accountant's advisory are "central" to any of the trustee's claims.  Thus, I have neither reviewed nor considered it in connection with the Rule 12(b)(6) motions, see In re Campbell Soup Co. Securities Litigation, 145 F. Supp. 2d 574, 588 n.1 (D.N.J. 2001), and elect not to convert this motion to one under summary judgment.

C.


Having concluded that the complaint states a cause of action for breach of fiduciary duty against the individual defendants—all of whom were officers and directors of the debtor—and against its purportedly controlling shareholders, Finloc, US and Finloc, Inc., I must now consider whether a claim is stated against the other defendants: Canam Manac Group, Inc., Canam Steel Corp., Winston Towers 1988, Inc. and PolyFlow, Inc.  These other corporate defendants are not shareholders, officers or directors of the debtor.  How then did they owe any fiduciary duty to the debtor?

The trustee raises two alternative arguments on this point.

First, the trustee contends that these corporate defendants can be classified as bankruptcy "insiders" of TCI, thereby owing it a fiduciary duty.  This argument assumes that every insider of a debtor for purposes of federal bankruptcy law owes it a fiduciary duty.  If I accept this proposition arguendo, 11 U.S.C. § 101(31) defines an insider as including---

> (B) if the debtor is a corporation—
>
> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;
> (iv) partnership in which the debtor is a general partner;
> (v) general partner of the debtor; or
> (vi) relative of a general partner, director, officer, or person in control of the debtor; . . .

The term "relative" is defined by section 101(45) to mean an "individual related by affinity or consanguinity . . . or an individual in a step or adoptive relationship .

. .."[10]  Although the definition of a "person" does include a corporation, 11 U.S.C. §

101(41), none of the non-fiduciary corporate defendants named immediately above could

be considered a relative of TCI.  Nor is it alleged that these four corporate defendants

controlled TCI.  Thus, they fall outside the scope of section 101(31)(B).

Under 11 U.S.C. § 101(31)(E), an insider is also defined as an "affiliate, or

insider of an affiliate as if such affiliate were the debtor[.]"  The term affiliate is itself

defined in section 101(2) to mean:

> (A) entity that directly or indirectly owns, controls, or holds
> with power to vote, 20 percent or more of the outstanding
> voting securities of the debtor, other than an entity that holds
> such securities--
>
>> (i) in a fiduciary or agency capacity without sole
>> discretionary power to vote such securities; or
>
>> (ii) solely to secure a debt, if such entity has not
>> in fact exercised such power to vote;
>
> (B) corporation 20 percent or more of whose outstanding
> voting securities are directly or indirectly owned, controlled,
> or held with power to vote, by the debtor, or by an entity that
> directly or indirectly owns, controls, or holds with power to
> vote, 20 percent or more of the outstanding voting securities
> of the debtor, other than an entity that holds such securities--
>
>> (i) in a fiduciary or agency capacity without sole
>> discretionary power to vote such securities; or

---

[10]This definition of a relative makes problematic the trustee's contention that
every bankruptcy insider holds a fiduciary duty to a debtor.  By this logic, all aunts and uncles of
an individual debtor owe their debtor/nephew or niece a fiduciary duty.  The legislative history
suggests that bankruptcy insiders are simply those whose relationship with the debtor justifies
closer scrutiny of all transactions, particularly for purposes of preference law and engaging
professionals.  See H.R. Rep. No. 595, 95th Cong., 1st Sess. 312 (1977); 11 U.S.C. §§ 101(14),
547(b)(4).  The need for closer scrutiny does not, by itself, establish a fiduciary relationship
under non-bankruptcy law.

(ii) solely to secure a debt, if such entity has not
in fact exercised such power to vote;

(C) person whose business is operated under a lease or
operating agreement by a debtor, or person substantially all of
whose property is operated under an operating agreement with
the debtor; or

(D) entity that operates the business or substantially all of the
property of the debtor under a lease or operating agreement[.]

By this definition Finloc US may be an affiliate of TCI, in that it is alleged

to own 71.08% of the debtor's stock.  Complaint, ¶ 10.  Insiders of Finloc US would be

considered insiders of TCI.  See In re Kroh Bros. Development Co., 137 B.R. 332, 334

(W.D. Mo. 1992).  However, Congress did not establish insider status to insiders of non-

affiliate insiders.  See In re Enterprise Acquisition Partners, Inc., 319 B.R. 626, 632-33

(B.A.P. 9th Cir. 2004).  Thus, "the bankruptcy court erred in expanding the statutory list

of per se insiders of a corporate debtor to include corporations that are solely owned by

persons who qualify as per se insiders."  Id., at 633.

The trustee's complaint does not allege facts to support his contention that

PolyFlow, Canam Manac, Canam Steel, Finloc Capital, Inc. or Winston Towers 1988

were statutory insiders of TCI or of affilate Finloc US.  For example, Finloc Capital

merely is alleged to own stock in Finloc US.  Complaint, ¶ 9.  Nor does he allege facts

that any of these corporate entities controlled the debtor.  See id. at 633 ("[T]hose who do

not qualify as per se insiders because they are not within the categories specifically listed

in the definitional statute can qualify as insiders only if they meet the test for

non-statutory insiders, which requires some showing of control of the debtor.").

Therefore, to the extent the trustee seeks to impose a fiduciary duty upon these four

corporations based upon their bankruptcy insider status, the complaint does not support this claim.[11]


D.


The trustee makes the alternative argument that these five corporations, even if not insiders of TCI, are nevertheless liable under Count I, because they aided and abetted breaches of fiduciary duty in connection with the July 2nd transfer by those defendants who were fiduciaries.[12]  As will be explained, except as to the Canam defendants, the complaint does contain sufficient allegations to support this theory of liability.

The Restatement 2d of Torts sets forth a tort for "Persons Acting in Concert":

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

---

[11]Therefore, I need not decide whether they would be considered fiduciaries under Pennsylvania law if they were insiders under federal bankruptcy law.

[12]Though not separately set out as a claim, the trustee alleged that "[e]ach of the Defendants caused, participated in and aided and abetted the other Defendants in committing the wrongs alleged herein."  Complaint, ¶ 33.

26

(c) gives substantial assistance to the other in accomplishing a
tortious result and his own conduct, separately considered,
constitutes a breach of duty to the third person.

Restatement 2d of Torts, § 876.

Although the Pennsylvania Supreme Court has not expressly adopted

Restatement 2d section 876 as a component of its common law, the district court in Pierce

predicted that it would as concerns breaches of fiduciary duties.  Pierce v. Rossetta Corp.

1992 WL 165817, at *8 (E.D. Pa. June 12, 1992):

> [T]his Court predicts that the Pennsylvania Supreme Court
> would recognize a claim for aiding and abetting the breach of
> a fiduciary duty in a case such as this one but would not
> recognize a separate claim for knowing inducement or
> participation in the breach of a fiduciary duty. This prediction
> is based on the Court's determination that the Pennsylvania
> Supreme Court would find Restatement (Second) of Torts §
> 874, comment c, and § 876(b), not New York case law or §
> 874, comment c, standing alone, controlling and therefore
> would require a showing of substantial assistance in order to
> establish liability for aiding and abetting the breach of a
> fiduciary duty. The Court also predicts that the elements of a
> claim for aiding and abetting the breach of a fiduciary duty
> under Pennsylvania law would be: (1) a breach of a fiduciary
> duty owed to another, (2) knowledge of the breach by the
> aider or abettor, and (3) substantial assistance or
> encouragement by the aider or abettor in effecting that breach.

(footnote omitted); see also Green v. Altman, 2004 WL 2106552, at *8 (E.D. Pa. 2004)

(following Pierce).

In 2003, an intermediate Pennsylvania appellate court agreed with the

analysis of Pierce, and concluded that Pennsylvania law does recognize a tort claim for

aiding and abetting a breach of fiduciary duty.  Koken v. Steinberg, 825 A.2d 723, 732

(Pa. Cmwlth. 2003).  In addition, the Koken court repeated Pierce's predicted elements of

this tort.  Id., at 732 (citing Pierce v. Rosetta Corp., 1992 WL 165817, at *8); see also

27

<u>Lichtman v. Taufer</u>, 2004 WL 1632574, at *8 (Pa. Com. Pl. 2004) (applying the <u>Koken</u> analysis).

Much earlier, the Third Circuit Court of Appeals, in applying Pennsylvania law, noted that Restatement 2d section 876 suggests six factors to determine whether a defendant rendered substantial assistance for purposes of accomplice liability:

> a. the nature of the act encouraged;
>
> b. the amount of assistance given by the defendant;
>
> c. the defendant's presence or absence at the time of the tort;
>
> d. the defendant's relation to the other tortfeasor;
>
> e. the defendant's state of mind; and
>
> f. the foreseeability of the harm that occurred.

<u>Fassett v. Delta Kappa Epsilon</u>, 807 F.2d 1150, 1163 (3d Cir. 1986) (quoting Restatement (Second) of Torts, § 876(b), comment d).

Accordingly, for purposes of these Rule 12(b)(6) motions to dismiss, I will accept that the five corporate non-fiduciary defendants can be liable to the trustee if they rendered substantial assistance to the fiduciary defendants who breached their common law duties.  <u>See also</u> <u>Thompson v. Glenmede Trust Co.</u>, 1996 WL 529696, at *2 n.6 (E.D. Pa. 1996) (noting that though the Pennsylvania Supreme has not adopted the aiding and abetting tort, it has not rejected it either, thus the claim survives a motion to dismiss).

Insofar as corporate defendants PolyFlow, Finloc Capital and Winston Towers are concerned, the complaint does allege, given the notice pleading standard, sufficient facts to support a theory that these three corporations rendered substantial assistance to the alleged breaches of fiduciary duties that were involved with the July

2002 transfers.  See Kaiser v. Stewart, 1997 WL 476455, at *17 (E.D. Pa. 1997)

(declining to dismiss a claim of aiding and abetting breach of fiduciary duty where

owners of three corporate entities approved and participated in scheme to siphon funds

through the three corporations); B. J. McAdams, Inc. v. Boggs, 426 F. Supp. 1091, 1105-

06 (E.D. Pa. 1977).  All three corporations were directly involved in the challenged asset

sale and distributions from TCI.

　　　　The same, however, cannot be said for defendants Canam Steel and Canam

Manac, for whom no actions or conduct are alleged at all.[13]  See generally Commerce

Bank & Trust Co. v. Vulcan Industries, Inc., 14 Mass. L. Rptr. 682, 2002 WL 1554389, at

*2 (Mass. Super. 2002) (applying Massachusetts' version of Rule 12(b)(6)).  Thus, Count

I shall be dismissed as to these two Canam defendants; but the trustee shall be granted

leave to amend his complaint to assert, if he can properly do so, the necessary allegations

for accomplice liability.  See American Standard Life and Acc. Ins. Co. v. U.R.L., Inc.,

701 F. Supp. 527, 539-40 (M.D. Pa. 1988).

　　　　As to the other defendants, the motions to dismiss Count I shall be denied.

---

[13]In his memorandum, the trustee suggests that "the Canam entities . . . stood at the top of the food chain of the closely related corporations which controlled TCI . . . and participated in the defrauding of TCI's creditors at the behest of those in control of the Canam entities."  Trustee's memorandum, at 21 n.20.  In essence, the trustee contends that the Canam defendants are liable for a breach of fiduciary duty solely because individuals that allegedly control those corporations—Dutil, Desjardins and Gouin—breached their duties to TCI, not because these corporations took any actions in substantial support thereof.  I find that contention unpersuasive.

III.

The trustee's second claim, also asserted against all of the defendants, alleges that the July 2, 2002 transfers were fraudulent. He avers that all the defendants "orchestrated, participated in and/or aided and abetted the July 2 Transfers with the actual intent to hinder, delay and/or defraud TCI's creditors." Complaint, ¶ 51. In addition, the trustee contends that TCI did not receive reasonably equivalent value in exchange for the transfer of its pipe production assets when it was insolvent, "engaged in business for which its remaining property constituted unreasonably small capital for its needs, and/or when the Defendants knew or should have known that TCI would incur additional debts that would be beyond TCI's ability to pay as such debts matured." Id., at ¶ 53.

The defendants respond that the trustee fails to assert the statutory basis for his claim to set aside the July 2, 2002 transfers as fraudulent conveyances. They also maintain that the trustee fails to allege fraud with the particularity required by Fed. R. Civ. P. 9(b). All the defendants except PolyFlow argue that they were not transferees and so can have no liability on this claim. They also assert that the trustee fails to state a claim for constructive fraudulent transfer, because he simply alleges that the assets sold were worth more than $6 million and TCI received consideration valued at $6.1 million.

In his memorandum opposing dismissal, the trustee relies upon section 544 of the Bankruptcy Code for Count II, which provision grants a bankruptcy trustee the power to avoid any transfer of the debtor's property that is voidable under applicable state law. See 11 U.S.C. § 544(b)(1); see generally In re PWS Holding Corp., 303 F.3d 308, 314 (3d Cir. 2002); In re Yuhas, 104 F.3d 612, 615 (3d Cir. 1997). The trustee contends

that section 544 incorporates Pennsylvania's Uniform Fraudulent Transfer Act

("PUFTA").  This state law provides that a "transfer made or obligation incurred by a

debtor is fraudulent as to a creditor . . . if the debtor made the transfer: (1) with actual

intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a

reasonably equivalent value in exchange for the transfer or obligation, and the debtor was

insolvent at the time of the transfer or became insolvent as a result of it."  12 Pa. C.S.A. §

5104.

        The Bankruptcy Code does grant a chapter 7 trustee the power to avoid a

transfer that would be avoidable under state law by a creditor holding an unsecured claim.

11 U.S.C. § 544(b);[14] In re Nam, 257 B.R. 749, 760 (Bankr. E.D. Pa. 2000).  Section 5104

of PUFTA provides the applicable standard to prove a fraudulent transfer has occurred.

12 Pa. C.S.A. § 5104.  See In re Blatstein, 192 F.3d 88, 96 (3d Cir. 1999).  Section 5104

states:

> (a) General Rule.–A transfer made or obligation incurred by a
> debtor is fraudulent as to a creditor, whether the creditor's
> claim arose before or after the transfer was made or the
> obligation was incurred, if the debtor made the transfer or
> incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor
> of the debtor; or

---

[14]Section 544(b)(1) provides:

Except as provided in paragraph (2), the trustee may avoid any
transfer of an interest of the debtor in property or any obligation
incurred by the debtor that is voidable under applicable law by a
creditor holding an unsecured claim that is allowable under section
502 of this title or that is not allowable only under section 502(e)
of this title.

31

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa. C.S.A. § 5104.

Section 5104 describes two different types of fraudulent transfers. The first involves an actual intent by the transferee to defraud. 12 Pa. C.S.A. § 5104(a)(1). Determination of the actual intent to defraud is aided by consideration of several statutory "badges of fraud" as follows:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa. C.S.A. § 5104(b); see Universal Computer Consulting, Inc. v. Pitcarin Enterprise, Inc., 2004 WL 345415, at *7 (E.D. Pa. 2004).

Courts have held that the strict language of section 5104(a)(1)—dealing with intentional fraudulent transfers—and its predecessor statutes does not require proof of insolvency or that reasonable equivalent value was not paid, but merely a showing that there was an "actual intent to hinder, delay, or defraud any creditor of the debtor." See e.g., Commonwealth Trust Co. v. Reconstruction Finance Corp., 120 F.2d 254, 256 (3d Cir. 1941) ("Where 'fair consideration' for the debtor's conveyance is lacking, the intent to hinder, delay or defraud is presumed as a matter of law.  It is only where an actual intent to defraud is proven that the transfer is void without regard for the quantum of the consideration."); United States v. Gleneagles Investment Co., 565 F. Supp. 556, 573 (M.D. Pa. 1983) (discussing a former section of the Pennsylvania statute: "Under Section 357, any obligation incurred or conveyance made with the intent to hinder, delay, or defraud creditors is fraudulent.  Under Section 357, the only inquiry is whether the requisite fraudulent intent existed at the time of the conveyance and whether creditors were in fact prejudiced by the conveyance."); Heaney v. Riddle, 23 A.2d 456, 458 (Pa. 1942) ("'Although no actual fraud is alleged here, the result is the same, since the distribution of a corporation's assets, leaving it incapable of discharging its debts, is fraudulent in the eyes of the law.'") (quoting Bankers Trust Co. v. Hale & Kilburn Corp., 84 F.2d 401, 405 (2d Cir. 1936)).

For example, where all of the assets of a corporation were transferred to another corporation, the transferee corporation continued to operate the business, the same individuals controlled both corporations, and the fair value of the assets was not

paid, the Third Circuit Court of Appeals held that an actual fraudulent conveyance had been proven. Voest-Alpine Trading USA Corp. v. Vantage Steel Corp., 919 F.2d 206, 208-09, 215 (3d Cir. 1990) (decided under the former Pennsylvania Fraudulent Conveyances Act); see also Kelley v. Thomas Solvent Co., 725 F. Supp. 1446, 1457 (W.D. Mich. 1988) (fraudulent transfer existed when a corporation transferred its assets to various spinoff companies to avoid corporate liabilities).

The second type of fraudulent conveyance involves a transfer considered to be constructively fraudulent as described by section 5104(a)(2). See In re Blatstein, 192 F.3d at 96. To set aside a transfer under subsection (a)(2), one does not have to prove that the debtor intended to defraud the specific creditor bringing the fraudulent transfer claim. Id., 192 F.3d at 97.

Possible remedies for a proven fraudulent transfer are avoidance of the transfer, an attachment to the transferred asset, an injunction against further disposition of the asset transferred, appointment of a receiver, and other relief as required by equity. 12 Pa. C.S.A. § 5107.[15]

---

[15]This section states:

(a) Available remedies.--In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in sections 5108 (relating to defenses, liability and protection of transferee) and 5109 (relating to extinguishment of cause of action), may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable law.

(continued...)

34

In arguing that TCI's assets were fraudulently transferred, the trustee does not isolate one particular transfer, but challenges the totality of the transfers that took place on July 2, 2002.  He alleges that, after these transfers, TCI's funds on hand remained the same while it transferred its pipe production assets, thus depriving it of the means to pay its creditors in the future.  To the trustee, the only purpose behind the sale of TCI's assets was to transfer them to a new corporation controlled by the same individuals that controlled TCI, while reducing the outstanding debts TCI owed to creditors affiliated with those individuals.  See Voest-Alpine Trading, 919 F.2d at 209 (series of simultaneous transfer considered a "single integrated and fraudulent transaction whose purpose and effect was to convey assets, at less than fair value, from the old corporation, Paige, to the new corporation, Vantage."); In re Sunbeam Corp., 284 B.R. 355, 370 (Bankr. S.D.N.Y. 2002):

> A loan may appear to provide fair consideration because the lender provided funds to an entity in exchange for a security interest.  If, however, the proceeds of that loan are transferred to a third party for less than fair consideration, the transactions may be collapsed and the initial lender's transfer deemed fraudulent if that initial transferor was intimately involved in the formulation or implementation of the plan by

---

[15](...continued)
(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

> (i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

> (ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

> (iii) any other relief the circumstances may require.

35

which the proceeds of the loan were channeled to the third
party.

See also In re FBN Food Services, Inc., 175 B.R. 671, 683 (Bankr. N.D. Ill. 1994)

(definition of transfer "broad enough . . . to catch various circuitous arrangements which

have the effect of a fraudulent conveyance.").

Accepting the trustee's allegations as true for purposes of these motions to

dismiss, I conclude that he may be able to prove at trial that the July 2nd transfers from

TCI to PolyFlow, Finloc Capital, Winston Towers and Finloc, Inc. were either intentional

or constructively fraudulent.

In addition, the trustee satisfactorily alleged facts supporting actual fraud by

demonstrating several of the badges of fraud enumerated in section 5104(b), including

that the transfer was concealed from TCI's creditors, that the transfer was of substantially

all of TCI's assets, that the debtor was insolvent and increased its insolvency as a result of

the transfer, and that the transfers "had no legitimate purpose or benefit to TCI,"

Complaint, ¶ 23, thus were not on account of an antecedent debt.  The trustee also alleged

that the consideration paid to TCI was "illusory," id., ¶ 23, resulted in TCI being stripped

of it most valuable asset, id., ¶ 24, was done to mislead creditors into believing TCI was a

going concern when it was not,  id., ¶ 25, and resulted in TCI being unable to pay its

creditors,  id., ¶ 31.  He further alleged that the "conduct of the Defendants . . . was

intentional, [and was] engaged in for an improper purpose and with a bad motive." Id., ¶

34.

Although the trustee never expressly cited to 12 Pa. C.S.A. § 5104 in Count

II of the complaint, such a statutory reference is not required for notice pleading, see

Appendix of Forms No. 13, given that the one-year statute of limitations for claims under

36

11 U.S.C. § 548(a)(1) had clearly run.  Thus, the trustee's complaint contains sufficient

specificity to permit the defendant/transferees to defend against this fraudulent

conveyance claim, pled in the alternative as either intentional or constructive.  See

General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1079-80 (7th Cir.

1997).

      The trustee has alleged that the transferees of these conveyances were

PolyFlow, Finloc Capital, Winston Towers and Finloc, Inc.  As to those defendants, the

trustee may possibly recover under Count II, if his allegations are proven at trial, and if

the defendants do not establish any affirmative defenses.  But none of the other

defendants are alleged to be transferees.  Can the trustee recover from a non-transferee

for a fraudulent conveyance, if, as alleged, the defendant aided and abetted by providing

substantial assistance in the conveyance, within the meaning of Restatement 2d of Torts §

876?

      Pennsylvania decisions do not address this issue as a matter of state law, see

Constitution Bank v. DiMarco, 155 B.R. 913, 920 (E.D. Pa. 1993), although the Insurance

Commissioner may believe that such recovery may be permissible.  See Koken v.

Lederman, 840 A.2d 446, 447 (Pa. Cmwlth. 2003) (insurance commissioner brings suit

against individual defendants for aiding and abetting allegedly fraudulent corporate

transactions); see also Rahl v. Bande, 328 B.R. 387, 398 (S.D.N.Y. 2005) ("Count VII of

the Complaint purports to state a claim against Verizon for aiding and abetting this

allegedly fraudulent conveyance.").

      The Eleventh Circuit Court of Appeals, however, held that no such recovery

is permitted under Georgia's fraudulent conveyance law.  Chepstow Ltd. v. Hunt, 381

37

F.3d 1077 (11th Cir. 2004).  Recently, a district court judge reached a similar conclusion

concerning Illinois state law, In re Parmalat Securities Litigation, 377 F. Supp. 2d 390,

416-17 (S.D.N.Y. 2005), and did so by following a ruling made in Baker O'Neal

Holdings, Inc. v. Ernst & Young LLP, 2004 WL 771230, at *14 (S.D. Ind. 2004), which

ruling, in turn, relied upon decisions from Florida, Maine, Texas and Connecticut.  All of

these decisions disallowed claims of accomplice liability involving fraudulent

conveyances.

      In distinguishing accomplice liability for a fraudulent conveyance from

accomplice liability for a breach of fiduciary duty, courts that have squarely considered

the issue have explained that the Uniform Fraudulent Transfer Act specifies the permitted

remedies—viz., 12 Pa. C.S.A. § 5107—all of which are directed at the transferor,

transferee, or the asset transferred, as well as the permissible defendants.  Thus, in

Pennsylvania, 12 Pa. C.S.A. § 5108 of PUFTA provides:

> b) Judgment for certain voidable transfers.--Except as
> otherwise provided in this section, to the extent a transfer is
> voidable in an action by a creditor under section 5107(a)(1)
> (relating to remedies of creditors), the creditor may recover
> judgment for the value of the asset transferred, as adjusted
> under subsection (c), or the amount necessary to satisfy the
> creditor's claim, whichever is less. The judgment may be
> entered against:
>
> > (1) the first transferee of the asset or the person
> > for whose benefit the transfer was made; or
> >
> > (2) any subsequent transferee other than a good
> > faith transferee who took for value or from any
> > subsequent transferee.

Not only are judgments statutorily limited to transferees, but the statutory defenses are so

constrained as well.  See 12 Pa. C.S.A. § 5108(a), (d).

I am thus persuaded that the Pennsylvania Supreme Court would conclude that a court is not free to expand upon the express provisions of PUFTA by holding non-transferees liable for fraudulent conveyances.  See, e.g., F.D.I.C. v. White, 1998 WL 120298, at *2 (N.D. Tex. 1998).  Thus, I predict that the Pennsylvania Supreme Court will not adopt the theory of accomplice liability when applying state fraudulent conveyance law.

Accordingly, Count II shall be dismissed as to the non-transferee defendants: the individual defendants, Finloc US, and the Canam defendants.  It shall not be dismissed to the transferee defendants, for the reasons stated earlier.  The trustee, however, shall be given leave to amend his pleading to allege, if appropriate, that additional defendants were transferees of TCI property within the scope of Count II.

IV.

The trustee's third cause of action is directed only against PolyFlow.  He contends that, as a result of the July 2002 transfers: TCI defacto merged into PolyFlow; PolyFlow was a mere continuation of TCI's business; and PolyFlow obtained TCI's assets without adequate consideration and without making provisions for the creditors of TCI.  Complaint, ¶ 57.  He therefore seeks on behalf of TCI a declaratory judgment that PolyFlow is the successor-in-interest to TCI, and therefore is liable to pay and satisfy the creditors of TCI, and that the assets and property of PolyFlow belong to the trustee.  Id., ¶ 58.

39

PolyFlow now argues that the trustee failed to sufficiently plead any ground constituting an exception to the general rule that the purchaser of corporate assets takes free and clear (except for duly perfected liens upon those assets) and does not become liable to the creditors of its predecessor.

In Pennsylvania, "it is well-established that 'when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property.'" Continental Ins. Co. v. Schneider, Inc., 873 A.2d 1286, 1291 (Pa. 2005) (quoting Hill v. Trailmobile, 412 Pa. Super. 320, 603 A.2d 602, 605 (1992)); see Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 308 (3d Cir. 1985); Polius v. Clark Equipment Co., 802 F.2d 75, 78 (3d Cir. 1986).  There are, however, exceptions to this principle of purchaser non-liability:

> This general rule of non-liability can be overcome, however, if it is established that (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation.

Continental Ins. Co. v. Schneider, Inc., 873 A.2d at 1291; see Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d at 308-09.[16]

"In determining whether a particular transaction amounts to a de facto merger, as distinguished from an ordinary purchase and sale of assets, many courts look to the following factors:

---

[16]Another recognized exception, not applicable here, is the "product-line" exception in product liability cases. Continental Ins. Co. v. Schneider, Inc., 873 A.2d at 1291 n.8.

(1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

Id., at 310 (applying theory in environmental nuisance case); see Forrest v. Beloit Corp., 278 F. Supp. 2d 471, 476 (E.D. Pa. 2003) (court considers "the provisions of the agreement, but also the consequences of the transaction."); see also Ross Controls, Inc. v. I.R.S., 164 B.R. 721, 727 (E.D. Pa. 1994) (finding company liable for tax liability as alter ego of original obligor).

In support of this claim of successor liability, the trustee alleges that PolyFlow continued the business operations of TCI without interruption, served TCI's customers, operated from TCI's facility, and used all of its equipment, production facilities, manufacturing processes, assets and good will, as well as its patents and intellectual property. Complaint, ¶ 27. He also asserts that PolyFlow operated as though TCI were a going concern. Id., ¶ 25. In addition, the trustee avers that PolyFlow retained TCI's senior management and most of its employees. See id., ¶ 27. Indeed, PolyFlow

purportedly employed Mr. Wright, a TCI director, as its president, and TCI's financial

officer, Mr. Kennedy, as its own.  Id.

In addition, the complaint contends that Finloc US, Inc., the 71.08%

shareholder of TCI, is also the 100% shareholder of PolyFlow, id., ¶ 10, thereby

providing a continuity of shareholders.  Although no stock transfer is alleged by the

trustee, "[a] transfer of stock is unnecessary to demonstrate a continuity of ownership

when there is no doubt that the owners of the buyer and the seller corporations are the

same."  In re Main, 1999 WL 424296, at *10 (E.D. Pa. Jun. 23, 1999).

Furthermore, although TCI did not immediately liquidate, the trustee

alleged that TCI effectively ended its operations when PolyFlow purchased its assets.  See

Complaint, ¶¶ 24, 25; In re Main, 1999 WL 424296, at *10 ("[T]he parties do not dispute

that DECO indeed ceased its operations, though it continues to exist formally.")  These

facts, if proven at trial, could demonstrate that the asset transfer from TCI to PolyFlow

represented a de facto merger.

In addition to the trustee's contention that the merger exception applies in

this instance, the trustee also alleges that successor liability is warranted because

PolyFlow subsequently diverted more than $1 million from TCI, leaving TCI without

funds to pay TCI's creditors and that TCI received little in return for the transfer of its

assets.  If proven, this allegation would support a finding that the transfer was without

adequate consideration and provisions were not made for creditors of TCI, possibly

establishing a different exception to the general rule against successor liability.  Finally,

the trustee's allegations that the July 2nd transfers were fraudulently committed to escape

liability from TCI's creditors supports yet another exclusion to the principle against
successor liability.

Upon consideration of all the allegations made by this complaint and the
reasonable inferences thereto, and as these averments must be accepted as true for
purposes of the defendant's motion to dismiss, I cannot conclude that the trustee has
failed to allege facts which, if proven, would not support a claim of successor liability.

Accordingly, PolyFlow's motion to dismiss Count III of the complaint must
be denied.

V.

Counts IV and V of the complaint are lodged against the individual
defendants.  Therein, the trustee asserts that the officer and director defendants breached
their fiduciary duties to TCI, or also were negligent, resulting in judgments against TCI
by Murphy Oil USA, Inc. and PISCES, Inc.  In support thereof, the trustee alleges that the
Murphy judgment was obtained "as a sanction for TCI's having disobeyed two discovery
orders."  Complaint, ¶ 37.  The PISCES judgment was purportedly obtained by default,
after TCI's counsel in the litigation withdrew and no new counsel was retained.  Id., ¶¶
40, 42.  Finally, the trustee claims that TCI was damaged by defendants' breaches of duty
and negligence in an amount exceeding $5 million.

In seeking dismissal of these claims, the individual defendants do not
dispute that they owed a fiduciary duty to TCI pursuant to Pennsylvania law.  Rather, they
maintain that the trustee has not identified any specific action or inaction by one or more

43

defendants that justifies liability regarding these prepetition judgments, nor has he alleged that any defendant retained control over these lawsuits, nor that the business judgment rule would not apply. They further argue that there is no assertion that TCI would have prevailed if the lawsuits were defended on their merits. Finally, they complain that the trustee could have sought to set aside the Murphy and PISCES judgments, but failed to do so.

In the context of a determination of the merits of these two counts, the defendants' arguments may, if demonstrated, either eliminate liability or damages. For example, the affirmative defense of the business judgment rule, discussed earlier, may insulate them from liability. The trustee may not be able to prove that TCI was damaged in any way. In the context, however, of a motion to dismiss under Rule 12(b)(6), and given the notice pleading requirements for these types of claims, see Lewis v. U.S. Slicing Machine Co., 311 F. Supp. 139 (W.D. Pa. 1970) (discussing Appendix Form 9 to Rule 84, illustrating a simple negligence complaint), and given that no affirmative defense is clear from the face of the complaint, I must relegate the individual defendants to the discovery process in order to fully comprehend the underlying facts upon which the trustee intends to rely at trial. See generally Reese v. Pennsylvania R. R., 14 F.R.D. 153 (W.D. Pa. 1953). The complaint is sufficient in that it places the defendants on notice of the date of the alleged occurrence of the negligence or breach, a general description of the defendants' purported failure that gives rise to liability, the result of this failure, the specific harm suffered, and damages allegedly incurred.

Therefore, their dismissal motions as to Counts IV and V shall be denied.

VI.

The trustee alleged as his sixth cause of action that all named defendants are liable to him for deepening the insolvency of TCI by an amount in excess of $17 million. This claim, he maintains, is premised upon the sham continued operation of TCI, which operation purportedly directly or indirectly caused the incurrence of debt to the detriment of the corporation and its creditors.

Specifically, the trustee asserts that after the July 2nd asset sale, TCI's business was limited to the distribution of pipe, the income from which was insufficient to pay creditors. Complaint, ¶ 31. TCI was kept operational nonetheless in order "to conceal the fraudulent transfers from creditors." Id., at ¶ 25.

The defendants responded that the trustee cannot bring this claim because the trustee, standing in the shoes of the debtor, is in pari delicto with the defendants: i.e., that any wrongful conduct by the defendants can be imputed to the debtor and therefore the claim cannot stand. They further argued that the trustee did not state how the debtor's insolvency increased from late 2001. Finally, they argued that the trustee did not allege any specific conduct by any of the defendants that would support a claim that these defendants wrongfully caused TCI's insolvency to deepen or otherwise committed fraud in connection with the continued operation of TCI. Finally, the individual defendants again maintain that their conduct is protected by the business judgment rule.

Although Pennsylvania's Supreme Court has not decided the issue, the Third Circuit Court of Appeals has predicted that Pennsylvania will recognize the tort of deepening insolvency. Official Committee of Unsecured Creditors v. R.F. Lafferty &

Co., 267 F.3d 340, 349 (3d Cir. 2001) ("[W]e conclude that, if faced with the issue, the Pennsylvania Supreme Court would determine that 'deepening insolvency' may give rise to a cognizable injury.").

The Lafferty court, in analyzing this state law tort, defines deepening insolvency as an injury resulting "from the fraudulent expansion of corporate debt and prolongation of corporate life." Id., at 347.  See, e.g., In re CITX Corp., Inc., 2005 WL 1388963, at *10 (E.D. Pa. 2005) ("[F]raudulent and concealed incurrence of debt can damage the value of corporate property by allowing an otherwise insolvent corporation to continue to incur debt, resulting in eventual bankruptcy."); Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp., 2004 WL 1900001, at *4 (E.D. Pa. 2004) ("As articulated by the Third Circuit, deepening insolvency involves 'prolonging an insolvent corporation's life through [b]ad debt.'") (quoting Lafferty at 350); In re Adelphia Communications Corp., 324 B.R. 492, 500 (Bankr. S.D.N.Y. 2005) ("[T]o be held liable for deepening insolvency, a party must have been able to foresee that the debtor was being operated for an improper purpose."); In re Global Service Group, LLC, 316 B.R. 451, 456 (Bankr. S.D.N.Y. 2004) (Deepening insolvency is defined as the "fraudulent prolongation of a corporation's life beyond insolvency, resulting in damage to the corporation caused by increased debt.") (quoting Schacht v. Brown, 711 F.2d 1343, 1350 (7th Cir. 1983)).

The Global Service court describes the tort of deepening insolvency as being something more than just failing to dissolve the corporation as soon as it becomes insolvent.  In re Global Service Group, LLC, 316 B.R. at 458.  It states "one seeking to recover for 'deepening insolvency' must show that the defendant prolonged the

company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt." Id., at 458. Liability for this tort is premised upon "fraudulent, rather than, negligent conduct." In re CITX Corp., Inc., 2005 WL 1388963, at *10.

Moreover, a bankruptcy trustee's claim for deepening insolvency may be defeated, as the defendants assert, by the doctrine of in pari delicto. The Third Circuit court describes this doctrine as barring the plaintiff from asserting "a claim against a defendant if the plaintiff bears fault for the claim." Lafferty, 267 F.3d at 354; see In re Dublin Securities, Inc., 133 F.3d 377, 380 (6th Cir. 1997) ("[N]o Court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.") (internal quotation marks omitted); CITX Corp., Inc., 2005 WL 1388963, at *11; Wishnefsky v. Riley & Fanelli, P.C., 799 A.2d 827, 829 (Pa. Super. Ct. 2002).

Pursuant to 11 U.S.C. § 541, the bankruptcy trustee becomes a successor in interest to "all legal or equitable interests of the debtor in property as of the commencement of the case." In the role of successor to all of the debtor's interests, the "trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. [Conversely,] [t]he 'trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.'" Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1154 (3d Cir. 1989) (quoting Collier on Bankruptcy ¶ 323.02[4] (Matthew Bender 15th ed.)). In other words, in asserting claims which belonged to the corporate debtor, the bankruptcy trustee is subject to all restrictions, including affirmative defenses, which could be raised, were the debtor corporation able to bring the action itself. See generally,

47

e.g., Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 492 (3d Cir. 1997). The Third Circuit has held that the tort of deepening insolvency is one belonging to the corporation, not its creditors. Lafferty, 267 F.3d at 349. Therefore the bankruptcy trustee, pursuant to section 541, has standing to bring the action, but is also subject to the affirmative defense of in pari delicto.

The Lafferty court held that an unsecured creditors' committee's status as an innocent successor to the debtor's interests did not relieve it from the application of the doctrine of in pari delicto. Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d at 357; see CITX Corp., Inc., 2005 WL 1388963, at *11. Similarly, trustees may be barred from bringing an action by in pari delicto. See In re Hedged-Investments Associates, Inc., 84 F.3d 1281, 1285 (10th Cir. 1996) (trustee is barred in pari delicto from bringing a suit for a violation of a partnership agreement); In re Dublin Securities, Inc., 133 F.3d at 380 (doctrine of in pari delicto bars a trustee from bringing a claim against the third party investors who benefitted from a Ponzi scheme); In re Advanced RISC Corp., 324 B.R. 10, 16 (D. Mass. 2005) (in pari delicto bars suit by the trustee against a broker); CITX Corp., Inc., 2005 WL 1388963, at *11. But see In re the Personal and Business Insurance Agency, 334 F.3d 239, 246 (3d Cir. 2003) (the trustee's claim is not subject to the defense of in pari delicto in section 548 actions, because this claim belonged to creditors, not to the debtor).

The doctrine of in pari delicto will only apply as a defense to the deepening insolvency claim if the debtor corporation committed some wrongdoing. Here, the trustee alleges wrongful conduct by all of the defendants. The wrongful conduct of the individual corporate officers and directors can be imputed to the corporation only if the

48

conduct was committed (1) "in the course of [the officer or director's] employment, and

(2) for the benefit of the corporation." Lafferty at 358-59.

Put another way, the wrongful conduct of a defendant will not be imputed

to the corporation if the action was not for the benefit of the corporation. This "adverse

interest exception" is applicable where actions taken were adverse to the corporation and

not for its benefit. Id., at 359; In re the Personal and Business Insurance Agency, 334

F.3d at 243.[17] But see In re Walnut Leasing Co., 1999 WL 729267, at *5 n. 12 (E.D. Pa.

1999) ("No reported authority suggests that an officer or director can assert the defense of

in pari delicto as defenses to the claim brought here on behalf of the debtor

corporations.").

The doctrine of in pari delicto is an affirmative defense that must be raised

by the parties. Lafferty, at 354. Though an affirmative defense normally is not

considered on a motion to dismiss, it may be if it "is established on the face of the

complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001). But see In re Exide

Technologies, Inc., 299 B.R. 732, 752 (Bankr. D. Del. 2003) (plaintiff is not required to

plead in pari delicto in its complaint because it is an affirmative defense). Because the

trustee pled that the defendants' conduct in deepening the insolvency of TCI adversely

affected TCI and benefitted these defendants, the affirmative defense of in pari delicto is

not established on the face of the complaint and cannot be considered in the context of a

motion to dismiss.

---

[17]The one exception to imputation is where the actor is the sole representative of the corporation—his actions are imputed regardless of whether they were in the best interest of the corporation. In re the Personal and Business Insurance Agency, 334 F.3d at 243. That is not the case here.

Furthermore, the trustee has stated facts which, if proved, may support a claim for deepening insolvency against the individual defendants and the two controlling shareholders of TCI.  He alleged that after the July 2nd transfers, TCI was left with no ability to pay its creditors, yet it was continued as a going concern.  Complaint, ¶ 25.  He alleged that TCI was harmed by the fiduciaries' conduct, as its debt increased during this period by $17 million.  Id., ¶ 32.  All of those defendants played a role in continuing TCI.

In contrast, the trustee's allegations, even if proven, do not support a deepening insolvency claim against Finloc Capital, Winston Towers, Finloc, Inc., PolyFlow or the Canam defendants, as the facts alleged do not support a finding that these defendants were involved with the continued operations of TCI, let alone that they acted tortiously in the accretion of future debt by the debtor.  This sixth claim therefore will be dismissed as against these defendants, subject to granting the trustee leave to amend if justified.

## VII.

The trustee's final claim seeks declaratory relief against each and every defendant, as a result of their breaches of fiduciary duty, inequitable conduct and "other wrongdoing" as follows: a declaration that the defendants' grant and/or perfection of a security interest in the property of TCI is null and void; denial of any right of setoff or recoupment made by the defendants against the claims asserted by the trustee in this litigation; disallowance of any and all claims of the defendants against the debtor; and/or

equitable subordination of any and all claims of the defendants until all other claims against the debtor have been satisfied.

The defendants responded that the trustee lacks standing to pursue the avoidance of the perfection of the security interest regarding the property of TCI, and that the other aspects of this claim for a declaratory judgment depend upon some or all of the preceding six claims, which cannot be proven.  Therefore, they demand that the seventh claim must also be dismissed.

Just having denied most of the defendants' motions to dismiss the previous counts, I do not find this particular argument for dismissing Count VII persuasive, except for the Canam defendants, against whom no valid cause of action has been lodged. Moreover, a bankruptcy trustee does have standing to challenge liens asserted against estate property.  See generally 11 U.S.C. §§ 544, 545, 547, 548, 549; see also In re Walter, 45 F.3d 1023 (6th Cir. 1995).  More specifically, 11 U.S.C. § 510(c) permits subordination of claims, even secured claims, held by corporate insiders, fiduciaries and (in very limited circumstances) other creditors.  See, e.g., In re Hedged-Investments Associates, Inc., 380 F.3d 1292, 1301-02 (10th Cir. 2004).  Nonetheless, there is a problem with Count VII which I must raise sua sponte, and which the trustee will be granted leave to remedy, if he can.

A federal court can only grant declaratory relief when there is a justiciable controversy.  See, e.g., Wyatt, V.I., Inc. v. Government of Virgin Islands, 385 F.3d 801, 805-06 (3d Cir. 2004).  All of the declaratory relief sought in Count VII is directed against defendants holding claims against TCI.  The only allegation that any of the defendants are creditors in this bankruptcy case is found in paragraph 29 of the trustee's

51

complaint, which alleges that Finloc Capital and Winston Tower filed UCC financing statements against property owned by TCI.

To declare that the hypothetical claims of defendants are disallowed or subordinated or not entitled to setoff would be impermissible.  Therefore, the trustee is granted leave to amend Count VII to demonstrate a case or controversy.  If not, Count VII must be dismissed except perhaps as to Winston Tower and Finloc Capital.  (It would also be helpful to the defendants in preparing their defense for the plaintiff to amend Count VII to specify the legal basis upon which relief is sought.)

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :        Chapter 11

TOTAL CONTAINMENT, INC.                        :

                    Debtor                     :        Bankruptcy No. 04-13144F
_____

GEORGE L. MILLER, Chapter 11 trustee           :

                    Plaintiff                  :

          v.                                   :

MARCEL DUTIL                                   :
THE CANAM MANAC GROUP, INC.
CANAM STEEL CORPORATION                        :
FINLOC, INC.
FINLOC CAPITAL, INC.                           :
FINLOC US, INC.
WINSTON TOWERS 1988, INC.                      :
POLYFLOW, INC.
JAY R. WRIGHT, JR.                             :
BERNARD GOUIN, and
PIERRE DESJARDINS                              :

                    Defendants                 :        Adversary No. 05-0145
_____

..............................................................

ORDER

..............................................................

AND NOW, this 18th day of October 2005, upon consideration of

defendants' motions to dismiss, and for the reasons stated in the accompanying

memorandum, it is hereby ordered as follows:

1. Defendants' motions to dismiss Count I are denied, except as to

defendants Canam Steel Corporation and Canam Manac Group, Inc.  The plaintiff is

given leave to file an amended complaint to state a cause of action under Count I against

those two defendants.  Such an amended complaint shall be filed and properly served

within twenty (20) days from the date of this order.

2. Defendants' motions to dismiss Count II are granted as to defendants

Dutil, Wright, Gouin, DesJardins, Canam Steel Corporation, Canam Manac Group, Inc.,

and Finloc US, Inc.  It is denied as to the other defendants.  The plaintiff is given leave to

file an amended complaint to state a cause of action within the scope of Count II against

additional transferees of TCI property.  Such an amended complaint shall be filed and

properly served within twenty (20) days from the date of this order.

3. Defendant PolyFlow's motion to dismiss Count III is denied.

4. Defendants' motions to dismiss Counts IV and V are denied.

5. Defendants' motions to dismiss Count VI are denied except as to

defendants Canam Steel Corporation, Canam Manac Group, Inc., Finloc Capital, Inc., and

Winston Towers 1988, Inc.  The plaintiff is given leave to file an amended complaint to

state a cause of action under Count VI against those four defendants.  Such an amended

complaint shall be filed and properly served within twenty (20) days from the date of this

order.

6. The defendants' motions to dismiss Count VII are granted.  However,

the plaintiff is given leave to file an amended complaint to state a cause of action under

Count VII.  Such an amended complaint shall be filed and properly served within twenty

(20) days from the date of this order.

It is further ordered that the defendants, except for those against whom all

claims have been dismissed, shall file and serve their answers to the presently filed

complaint within thirty (30) days from the date of this order, unless the plaintiff has

timely filed an amended complaint.  If an amended complaint is timely filed and served,

all defendants named in that amended complaint shall file and serve their responses

within 20 days from the date of service.  Upon the filing of those responses, an amended

pretrial order shall issue.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Steven M. Coren, Esq.
Kaufman, Coren & Ress, P.C.
1525 Locust St.
17th Floor
Philadelphia, PA 19102

Jeffrey D. Herschman, Esq.
DLA Piper Rudnic Gray Cary US, LLP
6225 Smith Ave
Baltimore, MD 21290

Phillip E. Wilson, Jr., Esq.
DLA Piper Rudnick Gray Cary US, LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Christopher W. Wasson, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Sts.
Philadelphia, PA 19103