UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                        :        Chapter 11

TOTAL CONTAINMENT, INC.                      :

                    Debtor                   :        Bankruptcy No. 04-13144
_____

GEORGE L. MILLER, Chapter 11 trustee         :

                    Plaintiff                :

        v.                                   :

MARCEL DUTIL                                 :
THE CANAM MANAC GROUP, INC.
CANAM STEEL CORPORATION                      :
FINLOC, INC.
FINLOC CAPITAL, INC.                         :
FINLOC US, INC.
WINSTON TOWERS 1988, INC.                    :
POLYFLOW, INC.
JAY R. WRIGHT, JR.                           :
BERNARD GOUIN, and
PIERRE DESJARDINS                            :

                    Defendants               :        Adversary No. 05-0145
_____

............................................................

MEMORANDUM

............................................................


        The chapter 11 trustee, George L. Miller, has commenced an adversary

proceeding asserting seven counts against 11 defendants, and seeking in excess of $23

million in damages along with declaratory relief.  All 11 defendants previously sought

dismissal of all counts based upon the trustee's purported failure to state a cause of action

against them, pursuant to Fed. R. Bankr. P. 7012 (incorporating, <u>inter</u> <u>alia</u>, Fed. R. Civ. P. 12(b)(6)).

By memorandum and order dated October 18, 2005, I granted the defendants' motions in part and denied them in part. Count I was dismissed, but only as to both Canam defendants; count II was dismissed as to defendants Dutil, Wright, Gouin, DesJardins, Canam Steel Corporation, Canam Manac Group, Inc., and Finloc US, Inc.; count VI was dismissed as to defendants Canam Steel Corporation, Canam Manac Group, Inc., Finloc Capital, Inc., and Winston Towers 1988, Inc.; and count VII was dismissed as to all defendants. The trustee was granted leave to amend these four counts, if appropriate. <u>See</u> <u>generally</u> <u>Jacobs v. Beard</u>, 172 Fed. Appx. 452, 456 (3d Cir. 2006) ("[W]hen a district court determines that a complaint is vulnerable to 12(b)(6) dismissal, the court must permit a curative amendment, regardless of whether the plaintiff seeks leave to amend, unless an amendment would be inequitable or futile."). Defendants' motions to dismiss counts III, IV and V were denied.

The trustee thereafter filed an amended complaint and certain defendants responded by filing new motions to dismiss amended counts I, II, VI and VII. Specifically, Canam Steel seeks dismissal of amended counts I, II, VI, and VII; Canam Manac Group seeks dismissal of amended counts I, II, and VI; Finloc US seeks dismissal of amended count II; and Finloc Capital and Winston Towers seek dismissal of amended count VI. Once again, all of these defendants contend that the trustee has failed to state a

cause of action as to them.  The trustee denies this assertion.[1]  He maintains that the facts

alleged, if proven, would justify relief as to these defendants on those four amended

counts.


A.


As did the original complaint, these four amended claims arise from the

July 2, 2002 transfer of pipe production assets from the debtor TCI to defendant

PolyFlow.  The trustee contends that the July 2nd transaction caused the following: TCI

transferred all of its pipe production assets to defendant PolyFlow and reduced its debt to

defendant Finloc, Inc. by about $2.6 million in cash and assigned debt, and reduced its

debt to defendants Winston Towers and Finloc Capital by about $3.75 million.  Winston

Towers exchanged a receivable due from TCI in the amount of $1.785 million either for a

capital contribution or a debt due in virtually the same amount from Finloc US.  And

defendant Finloc Capital exchanged its $1.965 million receivable due from TCI, again

either for a capital contribution or a debt in that amount due from Finloc US.

Attached as Exhibit A to the amended complaint is a modified flow chart.

According to this exhibit, the July 2nd transfer consisted of these events: Finloc Capital

transferred $1,965,000 to Finloc US, and Winston Towers transferred to Finloc US

$1,785,000, for a total transfer of $3,750,000.  Finloc US then purchased 100 shares of

---

[1]Based upon my interpretation of Pennsylvania law, with which the trustee
"respectfully disagrees and preserves that issue for appeal," the trustee concedes in paragraph 74
n.2 of the amended complaint that he does not state a claim as to the individual defendants
insofar as count II is concerned.  Therefore, that amended count shall remain dismissed as to
those defendants.

PolyFlow stock for $3,750,000 and paid $161,954 to Canam Steel.  PolyFlow thereafter

paid TCI $3,599,913, and assumed $2,550,000 in debt owed to Finloc, Inc., for TCI's

pipe production assets.  After receiving these funds from PolyFlow, TCI  paid

$1,753,137.50 to Finloc Capital, $1,783,579.86 to Winston Towers and $53,923 to

Finloc, Inc., totaling $3,590,640.36 in distributions.  Id., ¶ 38, Ex. A.

Based upon numerous allegations, the trustee maintains, inter alia, that all

defendants: breached their fiduciary duties to TCI and its creditors (count I); were

participants in a fraudulent conveyance of TCI's assets (count II); were responsible for

TCI's "deepening  insolvency" (count VI); and should have their proofs of claim against

TCI disallowed or subordinated (count VII).

B.

Applying Pennsylvania law,[2] I concluded in the earlier challenge to the

original complaint that TCI's corporate officers and directors held a fiduciary duty to the

corporation and, upon corporate insolvency, to its creditors.  Controlling corporate

shareholders can also have a similar fiduciary duty.  These fiduciary duties may be

breached by actions taken directly or indirectly to benefit or unjustly enrich a fiduciary.

Non-fiduciaries who knowingly and substantially aid and abet fiduciaries in breaching

their duties can also be held liable.  Pierce v. Rossetta Corp. 1992 WL 165817, at *8

(E.D. Pa. June 12, 1992); Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Cmwlth. 2003).  As

---

[2]The parties do not dispute that Pennsylvania law applies to all counts except
count VII.  I shall not repeat my lengthy analysis of state law.

to the two Canam defendants, who held no fiduciary duties, I concluded on October 18th

that the trustee failed to plead facts demonstrating such accomplice liability.

In amended count I, the trustee attempts to correct this omission by pleading

broadly:

> If and to the extent that any Defendant is found not to have
> had a fiduciary duty to TCI at the time of the transactions
> complained of herein, each such Defendant is nevertheless
> liable for having aided and abetted the breach of fiduciary
> duty by one or more of the other Defendants possessing such
> duties at the relevant times. Each non fiduciary Defendant
> substantially and knowingly participated in, benefitted from
> and aided and abetted the breach of fiduciary duty engaged in
> by the officers, directors and controlling shareholders of TCI.

Amended Complaint, ¶ 66; see also id., ¶ 49.

More specifically, the trustee alleges: Canam Steel "owned and controlled

all of the preferred shares of TCI stock and was in turn owned and controlled by Canam

Manac" (id., ¶¶ 4, 7)[3]; Canam Steel operated Finloc US, with the latter corporation being

the majority shareholder of TCI (id., ¶ 11); Canam Manac "directly or indirectly

controlled and/or operated . . . TCI" (id., ¶¶ 6, 18-19); and that the Canam defendants, due

in part to concerns about loan guarantees they issued on behalf of TCI, caused other

---

[3]In their motion to dismiss, the Canam defendants contend that Canam Steel
ceased being a preferred shareholder in June 2001, more than one year prior to the challenged
transfer transactions, and had no connection to the July 2nd conveyance. The amended
complaint does allege that the preferred stock was transferred to Finloc US, but does not mention
the date of the transfer; instead it avers that this transfer occurred "either on July 2 or on another
day but in preparation for or in connection therewith. . . ." Amended Complaint, ¶ 38. In
determining a motion to dismiss, however, I cannot accept the defendants' version of events. See
Foster v. Ford, 2005 WL 1645953, at *2 n.3 (N.D. Ohio 2005); Lester v. Brown, 1994 WL
702721, at *5 (N.D. Ill. 1994) ("[I]n resolving a motion to dismiss we must accept plaintiff's
version of events as true.").

defendants to participate in the July 2, 2002 allegedly improper transfer of assets.  (<u>Id.</u>, ¶¶ 34, 38).

The Canam defendants argue that these new allegations, even if true, are insufficient to prove accomplice liability for breach of fiduciary duty.  Respectfully, I disagree.  If these corporate defendants are proven to have orchestrated and directed conduct that caused fiduciaries to breach their duties, they may indeed be liable.  <u>See Cohen v. Joint Health Ventures</u>, 107 Fed. Appx. 714, 717-18 (9th Cir. 2004); <u>Stone Street Services, Inc. v. Daniels</u>, 2000 WL 1909373, at *3 (E.D. Pa. 2000); <u>see</u> generally <u>Monsen v. Consolidated Dressed Beef Co., Inc.</u>, 579 F.2d 793, 799 (3d Cir. 1978).  Accordingly, amended count I does state a claim against them.

C.

The trustee's second claim, also asserted against all of the defendants, alleges that the July 2, 2002 transfers were fraudulent conveyances under state law.  He avers that all of the defendants "orchestrated, participated in and/or aided and abetted the July 2 Transfers with the actual intent to hinder, delay and/or defraud TCI's creditors."  Amended Complaint, ¶ 68.  In addition, the trustee contends that TCI did not receive reasonably equivalent value in exchange for the transfer of its pipe production assets when it was insolvent, "engaged in business for which its remaining property constituted unreasonably small capital for its needs, and/or when the Defendants knew or should have known that TCI would incur additional debts that would be beyond TCI's ability to pay as such debts matured."  <u>Id.</u>, at ¶ 70.

6

Count II is based upon the Pennsylvania Uniform Fraudulent Transfer Act (PUFTA), 12 Pa. C.S.A. §§ 5101, et seq.  Previously, I concluded that the trustee had alleged facts that, if proven at trial, may demonstrate that the July 2nd transfers from TCI to PolyFlow, Finloc Capital, Winston Towers and Finloc, Inc. were either intentional or constructively fraudulent.  These were the putative transferees of TCI assets.  I also held though that Pennsylvania would not adopt the concept of accomplice liability for claims under PUFTA.  See, e.g., Chepstow Ltd. v. Hunt, 381 F.3d 1077 (11th Cir. 2004);  In re Parmalat Securities Litigation, 377 F. Supp. 2d 390, 416-17 (S.D.N.Y. 2005); Baker O'Neal Holdings, Inc. v. Ernst & Young LLP, 2004 WL 771230, at *14 (S.D. Ind. 2004).  Thus, aiding and abetting a fraudulent transfer does not, by itself, establish liability under state law.

In the original complaint, the trustee failed to allege that any of the individual defendants, the Canam defendants, or Finloc US received any of TCI's property stemming from the July 2002 transfers, or directly benefitted therefrom.  In the amended complaint, the trustee contends that in connection with the July 2nd transfer, "Finloc US transferred $161,954 to Canam Steel."  Amended Complaint, ¶ 38(o).  In addition, he asserts that Canam Manac Group was a beneficiary of the July 2nd transfers "in its capacity as owner of the preferred stock of Finloc and recipient of the profits of Finloc and in its capacity as 100% owner and recipient of the profits of Canam Steel."  Id., ¶ 73(a).  Similarly, the trustee alleges that Finloc US was a beneficiary "in its capacity as 100% owner of and recipient of the profits of PolyFlow and as the recipient of more

than $3.5 Million funneled from TCI through Winston Towers and Finloc Capital, See

Exhibit A." Id., at ¶ 73(e).[4]

    As mentioned earlier, Exhibit A to the amended complaint is a flow chart

purporting to show the transfers that occurred on July 2, 2002. This diagram asserts that

all of the pipe production assets of TCI were transferred to PolyFlow, and TCI's cash was

paid to Winston Towers, Finloc Inc. and Finloc Capital only. The alleged transfer of

$161,954 to Canam Steel is derived solely from the separate assets of Finloc US.[5] Thus,

even in the amended allegations, defendant Canam Steel is not a transferee of any of the

assets formerly owned by TCI. (Nor is it alleged to be a subsequent transferee.)

Therefore, the amended complaint still fails to assert a claim against this defendant as a

transferee of a fraudulent conveyance.

    Insofar as Canam Manac, Canam Steel and Finloc US are concerned, the

trustee observes that PUFTA establishes liability of transfer beneficiaries as well as

transferees of fraudulent conveyances. Specifically, 12 Pa. C.S.A. § 5108 states:

> b) Judgment for certain voidable transfers.–Except as
> otherwise provided in this section, to the extent a transfer is
> voidable in an action by a creditor under section 5107(a)(1)
> (relating to remedies of creditors), the creditor may recover
> judgment for the value of the asset transferred, as adjusted
> under subsection (c), or the amount necessary to satisfy the
> creditor's claim, whichever is less. The judgment may be
> entered against:

---

[4]If the trustee were alleging that Finloc US was a subsequent transferee of
property fraudulently conveyed by TCI, it would state a cause of action. Although ¶ 73(e) could
be so read, its reference to Exhibit A makes clear that Finloc US is not asserted to be a
subsequent transferee.

[5]As all of the funds that Finloc US received from Winston Towers and Finloc
Capital were paid to PolyFlow, Finloc US's transfer of money to Canam Steel must have been
made from cash on hand completely independent of the July 2nd transfers to and from TCI.

8

(1) the first transferee of the asset *or the person
for whose benefit the transfer was made*; or

(2) any subsequent transferee other than a good
faith transferee who took for value or from any
subsequent transferee.

(emphasis added).

Although the trustee alleges in paragraph 74 of his amended complaint that
any defendant who was not a transferee of the July 2nd conveyance is liable for aiding
and abetting, a legal contention I have already found unpersuasive, he also asserts that
defendants Finloc US and Canam Manac benefitted from the conveyance as shareholders
of PolyFlow and Finloc, Inc. respectively, which were transferees.  Amended Complaint,
¶ 73.  In his memorandum, he further maintains that both Canam defendants were
beneficiaries of the transfer due to their alleged guarantee of TCI's debt to the Bank of
America:

In the case at bar, it can be reasonably inferred from the
Amended Complaint that the Canam entities, as creditors,
were among the real beneficiaries of the fraudulent
conveyance of TCI's assets, since the transfer of the Debtor's
Pipe Production Business, at the very least, *mitigated the
impact* on the Canam Guarantors of having to make good on a
$7.5 million liability to Bank of America, i.e. "a bird in their
hand (TCI's Pipe Production Business) was definitely worth
two in the bush (bankruptcy court)."

Trustee's Omnibus Memorandum, at 14 (emphasis in original) (footnote omitted).

While I accept the trustee's legal premise—that one who is a beneficiary of
a fraudulent transfer, but not a transferee, may be held liable under PUFTA—I cannot
agree that the amended complaint adequately sets forth that the Canam defendants or
Finloc US were beneficiaries within the meaning of section 5108(b)(1).

9

D.


At the outset, I note that the trustee did not cite any Pennsylvania decision supporting his argument that these three defendants were beneficiaries, based upon their loan guarantee or stock holdings.  Indeed, there appears to be no reported state court decision discussing the meaning of beneficiary under PUFTA.  However, in its 1993 Comment issued in conjunction with the enactment of PUFTA, the Pennsylvania Bar Association Section on Corporation, Banking and Business Law acknowledged that section 5108(b) "is derived from § 550(a) and § 550(b) of the Bankruptcy Code." Committee Comment(2) to Section 5108 (1993).[6]  Moreover, the trustee's use of PUFTA in this adversary proceeding is derived from section 544 of the Bankruptcy Code, see In re Walter, 261 B.R. 139, 141-42 (Bankr. W.D. Pa. 2001); therefore any recovery would be based upon section 550.  See In re First Independence Capital Corp., 2006 WL 1342789, at *5 (6th Cir. 2006):

> But even though voidability under § 544 may be premised on
> state law, recovery of transfers avoided under this section,

---

[6]11 U.S.C. § 550(a) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--

> (1) the initial transferee of such transfer or the entity
> for whose benefit such transfer was made; or

> (2) any immediate or mediate transferee of such
> initial transferee.

> like recovery of transfers avoided under § 548, hinges on §
> 550 of the Bankruptcy Code rather than on state law.

Accordingly, decisions construing section 550(a) and interpreting the phrase "the entity

for whose benefit the transfer was made" are germane to the instant motions to dismiss

count II.

In general, most courts have interpreted section 550(a) consistent with the

holding of <u>Mack v. Newton</u>, 737 F.2d 1343, 1359-60 (5th Cir. 1984).  In <u>Mack</u>, the Fifth

Circuit concluded that fraudulent conveyance liability under section 70e of the former

Bankruptcy Act of 1898 could not lie against a non-transferee who received only "an

incidental, unquantifiable, and remote benefit bearing no necessary correspondence to the

value of the property transferred or received."  As observed by two commentators, "[t]he

Fifth Circuit's admonition in <u>Mack</u> that the benefit must bear a 'necessary

correspondence' to the value of the property transferred that is more than incidental and

remote provides guidance in constructing a more workable rule."  Chen & Teofan, <u>The</u>

<u>Indentity and Liability of the Entity for Whose Benefit a Transfer Is Made Under Section</u>

<u>550(A): An Alternative to the Rorschach Test</u>, 4 J. Bankr. L. & Prac. 145, 173 (1995)

("Chen & Teofan").  A "workable rule" becomes necessary because one can construe the

meaning of benefit so broadly that the intended purpose behind the recovery of fraudulent

conveyances becomes lost:

> The concept of "benefit" subsumes an innumerable variety of
> advantages. In addition to direct financial gain, benefit may
> be expressed in terms of aesthetic enjoyment, use, deferred
> loss, enhancement in value, indirect profits, improved
> liquidity, increased control over an asset, and enhanced
> marketability, among others. Under its broadest interpretation,
> a trustee would have little difficulty in showing some
> "benefit" to anyone remotely connected to a transfer. An
> examination of the cases permitting recovery from

11

> beneficiaries, however, reveals a narrower interpretation of
> the requisite "benefit."

Chen & Teofan, at 163-64.

Consistent with this narrow definition of benefit, the Eleventh Circuit recently considered whether an individual, who was the sole shareholder and officer of a corporation, could be liable for a fraudulent conveyance as a beneficiary.  In re International Management Assoc., 399 F.3d 1288 (11th Cir. 2005).  The bankruptcy trustee in that case had argued, and the lower courts had agreed, that:

> Reily was the "primary beneficiary" of the transfer to Dr.
> Gichon "as he wound up with 100% of the stock of Premier,
> along with the control of all of the assets of the Debtors
> within his own closely held corporation," and so was the
> "entity for whose benefit the transfers were made pursuant to
> 11 U.S.C. § 550."

Id., at 1291 (quoting the lower court decision).  The Circuit Court acknowledged that Reily received some benefit from the challenged transaction, but concluded that his benefit was not concrete enough for liability under section 550(a).  It gave this lengthy explanation for its ruling:

> The overarching purpose of the transaction before us was to
> obtain a loan from Healthcare REIT to restructure the
> financing of the assisted living facilities and to provide capital
> for continued operations.  A condition of that loan was that
> Reily be the sole owner of the stock of the debtor
> corporations.  Therefore, the acquisition of the stock was in
> the interest of furthering the loan and the restructuring--goals
> which fulfilled Reily's purposes.  Hence, Reily was
> "benefitted" in a larger sense when he obtained complete
> control of the debtors' assets and therefore fulfilled a
> necessary condition of obtaining the funds from Health Care
> REIT.  This is the "benefit" that both the trustee and the
> bankruptcy court attributed to Reily in order to underpin
> liability. . . .  However, this sort of unquantifiable advantage
> is not the sort of "benefit" contemplated by 11 U.S.C. §
> 550(a).

12

The paradigm case of a benefit under § 550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor.  See In re Coggin, 30 F.3d 1443, 1453 (11th Cir. 1994) (stating that the phrase "entity for whose benefit such transfer was made" "usually has been employed when the trustee attempts to recover from a guarantor of an underlying debt"). . . .

The example of a debt and a guarantor affords some insight into the intention of Congress in enacting § 550(a).  The fact that Reily attained complete control over the debtors' assets does not give rise to a quantifiable benefit or one bearing the "necessary correspondence to the value of the property transferred or received."  Mack v. Newton, 737 F.2d 1343, 1359-60 (5th Cir. 1984).  The immediate facts here are that debtor corporations paid $100,000 for stock worth less than $100,000 (and that was probably worth nothing). There is no direct benefit to Reily in a transaction that reduced the assets under his control by $100,000 but increased to an unquantifiable extent the concentration of his control or ownership of that shrunken asset base.  The only "benefit" cited by the bankruptcy court was the winning of 100% control over depleted assets.  This is not a tangible or a quantifiable benefit.  See id. (rejecting as too broad the trustee's allegation that the principals in a partnership had received an incidental benefit from auctioning off cattle and using the proceeds to operate their dairy enterprise, deeming this "an incidental, unquantifiable, and remote benefit bearing no necessary correspondence to the value of the property transferred or received.").  Even as a matter of arithmetic, the transfer here depleted and did not augment the assets of debtors controlled by Reily.  The fact that Reily gained exclusive control of a smaller pool of assets does not, on the facts before us, weigh in the balance.  The very fact that the bankruptcy estate received "less than a reasonably equivalent value in exchange" for the $100,000 (to qualify the transfer as voidable under 11 U.S.C. § 550(a)) would deprive Reily of any net benefit in the transfer.  Thus, Reily's loss was $100,000 from the assets subject to his control, while his only gain was the value of the stock giving him 100% control, which, in order for the transfer to be voidable, was worth less than $100,000.

This case is immediately distinguishable from In re B.S. Livingston & Co., Inc., 186 B.R. 841 ([] D.N.J. 1995), in which the defendants were benefitted when they sold the core

> of the debtor's business to a third party in exchange for
> lucrative positions in the new company. Although Livingston
> may present a "benefit" that is on the far edge of qualification
> under 11 U.S.C. § 550(a), there is no obvious violence to the
> language in stating that the benefit of a lucrative position, like
> the benefit experienced by a guarantor, may be considered
> direct, ascertainable and quantifiable, unlike the "benefit"
> attributed to Reily.

Id., at 1292-93 (footnote, citations and reference to the record omitted).

A similar conclusion was just reached in In re Hansen, 341 B.R. 638

(Bankr. N.D. Ill. 2006). There the chapter 7 trustee sought to recover from the president

and majority shareholder an allegedly fraudulent transfer made by the individual debtor to

the defendant's corporation. The defendant, Richard Stiefel, was also the guarantor of

certain corporate obligations; however, none of the transferred funds were used to reduce

this guarantee. Id., at 641-42. The Bankruptcy Court held that stock ownership or

officership status by themselves are insufficient to provide a direct and quantifiable

benefit when the corporation is the recipient of an allegedly fraudulent transfer, unless the

individual is found to be the alter ego of the corporation:

> Nothing in section 550(a)(1) indicates that corporate form can
> be thrust aside and all voidable transfers to a corporation
> recovered from its shareholders on the mere assumption that
> shareholders somehow automatically "benefit" from such
> transfers. If corporate existence is to be observed, transfers
> cannot be recovered even from a shareholder who by virtue of
> his majority ownership ostensibly "controls" the corporation. .
> . . Something more than mere status as a shareholder, officer,
> or director must be shown. . . .
>
> The better view--and the one consistent with corporate law--is
> that shareholders, officers, and directors are not liable for
> transfers to their corporation unless they actually received
> distributions of the transferred property (in which case they
> would be subsequent transferees under section 550(a)(2)), or a
> showing can be made to pierce the corporate veil. . . . Most
> cases in which shareholders or officers have been found

14

responsible under section 550(a)(1) as beneficiaries of
corporate transfers have involved some veil-piercing aspect.

Id., at 645-46 (citations omitted).  This narrow definition of benefit under section 550(a)

is consistent with that used in construing section 547(b)(1): the defendant must have

"realized some *quantifiable monetary advantage* from the debtor's transfer . . . ."  In re

Erin Food Services, Inc., 980 F.2d 792, 800 (1st Cir. 1992) (emphasis in original).

 In the amended complaint, the only benefits that the Canam defendants and

Finloc US allegedly received were indirect and unquantifiable.  There was no allegation

that any of the funds involved with the July 2nd transfer were used to reduce the Canam

defendants' guarantee of TCI's obligation to the Bank of America.  The guarantee

obligation remained unchanged and unreduced.  Rather, the trustee posits that, as a result

of the transfer, there was a possibility that the guarantors' exposure could be reduced in

the future.  This potential benefit is too remote for liability under section 550(a).

 Similarly, the trustee is implicitly asserting in amended count II that parent

corporations or affiliate corporations of corporate transferees that have allegedly received

fraudulent conveyances may also be liable, based solely upon their relationship to the

transferees.  This contention is equally unpersuasive, unless the parent or affiliate

corporation is the alter ego of the corporate transferee, an assertion that the trustee does

not make[7]; or that the fraudulently conveyed assets were themselves transferred to the

---

[7]The Third Circuit Court of Appeals analyzed Pennsylvania law for piercing the
corporate veil in the following terms:

 We have stated that "[f]actors considered under Pennsylvania law,
 for example, with respect to the alter ego theory include, but are
 not limited to, the following: '[T]he failure to observe corporate
 formalities; non-payment of dividends; insolvency of debtor

 (continued...)

15

parent or affiliate.  Compare In re FBN Food Services, Inc., 175 B.R. 671, 686-88 (Bankr.

N.D. Ill. 1994) (parent company exercises control over the transferred assets for its own

purposes).  Again, the trustee does not so contend in his amended complaint.  See Exhibit

A.

Accordingly, as to amended count II, the motions to dismiss filed by the

Canam defendants and Finloc US are sustained.  See Crowthers McCall Pattern, Inc. v.

Lewis, 129 B.R. 992, 996 (S.D.N.Y. 1991).


D.


The trustee alleged as his amended sixth cause of action that all named

defendants are liable to him for deepening the insolvency of TCI by an amount in excess

of $17 million.  Amended Complaint, ¶¶ 47, 92.  This claim, he maintains, is premised

upon the sham continued operation of TCI, which operation purportedly directly or

indirectly caused the incurrence of debt to the detriment of the corporation and its

creditors.

---

[7](...continued)
corporation; siphoning the funds from corporation by dominant
shareholders; non-functioning of other officers and directors;
absence of corporate records; whether the corporation is a mere
facade for the operations of a common shareholder or shareholders;
and gross undercapitalization.'"  Eastern Minerals & Chemicals
Co. v. Mahan, 225 F.3d 330, 333 n.7 (3d Cir. 2000) (quoting
Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc., 758 F. Supp.
1054, 1059 (W.D. Pa. 1990)).

Plastipak Packaging, Inc. v. DePasquale, 2003 WL 22120971, at *1 (3d Cir. 2003)
(unpublished); see Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir.
1994), aff'd, 514 U.S. 938 (1995).

Specifically, the trustee asserts that after the July 2nd asset sale, TCI's business was limited to the distribution of pipe, the income from which was insufficient to pay creditors. Amended Complaint, ¶¶ 33, 46. TCI was kept operational nonetheless in order "to conceal the fraudulent transfers of the Pipe Production Business until expiration of the applicable statutes of limitations" and to mislead creditors into believing that TCI . . . was continuing as a going concern and conducting business as usual." Id., at ¶¶ 33, 40.

The Third Circuit Court of Appeals has predicted that Pennsylvania will recognize the tort of deepening insolvency. Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 349 (3d Cir. 2001); see also In re CitX Corp., Inc., 448 F.3d 672, 680 (3d Cir. 2006). This tort involves the "[t]he fraudulent and concealed incurrence of debt" that damages the value of a corporation. Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d at 349; see also In re Global Service Group, LLC, 316 B.R. 451, 456 (Bankr. S.D.N.Y. 2004) (deepening insolvency is defined as the "'fraudulent prolongation of a corporation's life beyond insolvency,' resulting in damage to the corporation caused by increased debt.") (quoting Schacht v. Brown, 711 F.2d 1343, 1350 (7th Cir. 1983)).

Insofar as the original complaint was concerned, I dismissed count VI as to Finloc Capital, Winston Towers, Finloc, Inc., PolyFlow and the Canam defendants, as the facts alleged did not support a possible finding that these defendants were involved with the continued operations of TCI, let alone that they acted tortiously in the accretion of future debt by the debtor. In an attempt to state a cause of action against the Canam

defendants, Winston Towers and Finloc Capital, the trustee's amended complaint alleges
the following:

> 88. Dutil acted on his own behalf, and as agent for and on
> behalf of Canam Manac and Canam Steel in connection with
> causing TCI to continue and remain in business after the July
> 2 Transfers, knowing full well that TCI could not continue as
> a going concern, was deceiving past and future creditors as to
> its financial condition and was continuing to incur substantial
> new debt that it could not possibly repay. Since Dutil acted as
> an agent for and within the scope of his authority on behalf of
> Canam Manac and Canam Steel, Defendants Canam Manac
> and Canam Steel are responsible for having caused TCI to
> continue and remain in business after the July 2 Transfers,
> and are charged with the knowledge and intent that TCI was
> being continued for the illegal purposes alleged herein.
>
> ***
>
> 90. Defendants Finloc Capital and Winston Towers (through
> their ownership and control of PolyFlow and otherwise)
> caused TCI to continue and remain in business after the July 2
> Transfers, knowing full well that TCI could not continue as a
> going concern, was deceiving past and future creditors as to
> its financial condition and was continuing to incur substantial
> new debt that it could not possibly repay.

Amended Complaint, ¶¶ 88, 90.

As concerns defendants Finloc Capital and Winston Towers, the amended

complaint—which does not assert any alter ego status or agency relationship—does not

allege that they participated in the continued operations of TCI and its accrual of

additional debt. Instead, these defendants allegedly controlled PolyFlow, and PolyFlow,

which is a separate defendant, purportedly was responsible for TCI's deepening

insolvency. Such a tenuous connection does not state a cause of action for this tort. See

In re VarTec Telecom, Inc., 335 B.R. 631, 645-46 (Bankr. N.D. Tex. 2005).

Insofar as the Canam defendants are concerned, the amended complaint

now claims that they, acting through their agent Mr. Dutil who was a director of TCI,

18

wrongfully deepened TCI's insolvency.  To the extent that Pennsylvania would recognize the tort of deepening insolvency, it would hold a principal liable for the actions of its agent.  See also Marion v. TDI, Inc., 2004 WL 1175740, at *1 (E.D. Pa. 2004) (denying a motion to dismiss a claim of aiding and abetting deepening insolvency).

In the context of these motions, I must assume that the trustee can prove Mr. Dutil's agency status at trial.  Accordingly, the motion of the Canam defendants to dismiss count VI is denied.  The motion of Finloc Capital and Winston Towers to dismiss count VI is granted.

E.

In count VII of his amended complaint, the trustee requests that any secured, indemnification or unsecured claims asserted by any of the defendants either be disallowed or be subordinated to the claims of unsecured creditors.  He asserts that all of the defendants except Canam Manac Group have filed proofs of claims in this chapter 11 case, and these claims total $13 million.  Amended Complaint, ¶ 94.  Disallowance of the defendants' claims is based upon their alleged breaches of fiduciary duties.  Subordination relief is sought under 11 U.S.C. § 510(c).  See generally In re McCook Metals, L.L.C., 319 B.R. 570 (Bankr. N.D. Ill. 2005); In re Ticketplanet.com, 313 B.R. 46, 65-66 (Bankr. S.D.N.Y. 2004).

In dismissing this count in the original complaint, I then observed that the trustee had failed to allege that any defendant, except Winston Tower and Finloc Capital, had asserted any claim against TCI.  He was given the opportunity to correct this

19

oversight, and he has now done so.  Indeed, Exhibit B to the amended complaint lists the

claims filed of the various defendants in this case.

Recognizing that Canam Manac Group has filed no claim in this chapter 11

case, the trustee seeks no relief against this defendant in count VII.  Presently, only

Canam Steel seeks dismissal of amended count VII, based upon its assertion that the

trustee has failed to assert any valid claims against it in counts I, II, or VI.  Having just

concluded that the trustee's amended allegations would, if proven, provide relief against

Canam Steel for breach of fiduciary duty and deepening insolvency, I will deny Canam

Steel's request to dismiss count VII.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| TOTAL CONTAINMENT, INC. | : | |
| Debtor | : | Bankruptcy No. 04-13144 |

_____

| | | |
|---|---|---|
| GEORGE L. MILLER, Chapter 11 trustee | : | |
| Plaintiff | : | |
| v. | : | |
| MARCEL DUTIL | : | |
| THE CANAM MANAC GROUP, INC. | | |
| CANAM STEEL CORPORATION | : | |
| FINLOC, INC. | | |
| FINLOC CAPITAL, INC. | : | |
| FINLOC US, INC. | | |
| WINSTON TOWERS 1988, INC. | : | |
| POLYFLOW, INC. | | |
| JAY R. WRIGHT, JR. | : | |
| BERNARD GOUIN, and | | |
| PIERRE DESJARDINS | : | |
| Defendants | : | Adversary No. 05-0145 |

_____

............................................................

ORDER

............................................................

AND NOW, this 17th day of August 2006, for the reasons stated in the

accompanying memorandum, it is hereby ordered that defendants' motions to dismiss

amended counts I, II, VI and VII are granted in part and denied in part, as follows:

1. The motions to dismiss amended count I as to Canam Steel Corporation

and Canam Manac Group, Inc. are denied;

2. The motions to dismiss amended count II as to the Canam defendants and Finloc US, Inc. are granted.  Furthermore, amended count II remains dismissed as to the individual defendants;

3. The motions to dismiss amended count VI as to the Canam defendants are denied.  The motions to dismiss amended count VI as to Finloc Capital, Inc. and Winston Towers 1988, Inc. are granted; and

4. The motions to dismiss amended count VII are denied.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Steven M. Coren, Esq.
Kaufman, Coren & Ress, P.C.
1525 Locust St., 17th Floor
Philadelphia, PA 19102

Jeffrey D. Herschman, Esq.
DLA Piper Rudnic Gray Cary US, LLP
6225 Smith Ave
Baltimore, MD 21209

Phillip E. Wilson, Jr., Esq.
DLA Piper Rudnick Gray Cary US, LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Christopher W. Wasson, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Sts.
Philadelphia, PA 19103