## UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| TOTAL CONTAINMENT, INC. | : | |
| Debtor | : | Bankruptcy No. 04-13144bif |

_____

| | | |
|---|---|---|
| GEORGE L. MILLER, Chapter 11 trustee | : | |
| Plaintiff | : | |
| v. | : | |
| MARCEL DUTIL, et al. | : | |
| Defendants | : | Adversary No. 05-0145 |

_____

..............................................................

### MEMORANDUM

..............................................................

Canam Steel Corporation and Finloc, Inc. have filed a joint motion to compel the plaintiff in this adversary proceeding, George L. Miller, to produce certain documents and supplement his answers to interrogatories.[1]  Mr. Miller initially opposed any such relief, but in a supplemental memorandum he agreed to modify his answers to interrogatories from these defendants.  Nonetheless, there remains a dispute among these parties, primarily involving the plaintiff's assertion of privilege concerning numerous documents.

_____

[1]Since this motion to compel was filed, Canam Group, Inc. has been substituted for Canam Steel Corp. as counterclaimant and third-party plaintiff.  I assume that Canam Group supports this motion to compel and will consider it accordingly.

I have reviewed the parties' extensive written submissions, including <u>in camera</u> review of numerous documents designated by the plaintiff as protected by the attorney-client privilege, the joint-defense privilege, and/or the work-product doctrine. I have also reviewed the plaintiff's privilege log, which the movants complain is deficient because it did not specify the reason the unproduced documents were privileged.

The movants also assert that the plaintiff waived any attorney-client privilege when he responded to interrogatories concerning the reasons that the plaintiff "did not attempt to reopen and/or vacate the judgment" in the "Murphy Oil Suit" and the "Pisces Suit," with answers that included the following:

> . . . based upon the advice of counsel, the Trustee concluded that the likelihood of prevailing . . . was likely non-existent (or at best extremely small) and not worth the expenditure of limited Estate resources. . . .

Based upon this response, the movants contend that the plaintiff must now produce "all documents that constitute, refer to, or otherwise concern any of the referenced legal advice upon which Mr. Miller allegedly relied." Movants' Memorandum, at 4; <u>see generally</u> <u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, 455 F.3d 195, 221 n.24 (3d Cir. 2006) ("[W]e remind the parties that the attorney-client privilege cannot be used as both a 'shield' and a 'sword': Berckeley cannot rely upon the legal advice it received for the purpose of negating its scienter without permitting Colkitt the opportunity to probe the surrounding circumstances and substance of that advice.").

The plaintiff responds that his privilege log adequately informed the movants as to the nature of the privilege and, if not, his amended privilege log corrected any deficiencies. He further contends that his answer to the interrogatories, quoted above,

did not waive any attorney-client privilege, relying upon the following analysis from the

Third Circuit Court of Appeals:

> There is authority for the proposition that a party can waive
> the attorney client privilege by asserting claims or defenses
> that put his or her attorney's advice in issue in the litigation.
> For example, a client may waive the privilege as to certain
> communications with a lawyer by filing a malpractice action
> against the lawyer. . . .  A defendant may also waive the
> privilege by asserting reliance on the advice of counsel as an
> affirmative defense.  Chevron Corp. v. Pennzoil Co., 974 F.2d
> 1156 (9th Cir. 1992) (party's claim that its tax position was
> reasonable because it was based on advice of counsel puts
> advice in issue and waives privilege); see also Hunt v.
> Blackburn, 128 U.S. at 470, 9 S. Ct. at 127 (client waives
> privilege when she alleges as a defense that she was misled by
> counsel). . . .  In an action for patent infringement, where a
> party is accused of acting willfully, and where that party
> asserts as an essential element of its defense that it relied upon
> the advice of counsel, the party waives the privilege regarding
> communications pertaining to that advice.  Mellon v.
> Beecham Group PLC, 17 U.S.P.Q.2d 1149, 1151, 1991 WL
> 16494 (D.N.J. 1991); see also, e.g., W.L. Gore & Associates,
> Inc. v. Tetratec Corp., 15 U.S.P.Q.2d 1048, 1051, 1989 WL
> 144178 (E.D. Pa. 1989) (client waived privilege by asserting
> reliance upon advice of counsel as an essential element of his
> defense).
>
> In these cases, the client has made the decision and taken the
> affirmative step in the litigation to place the advice of the
> attorney in issue.  Courts have found that by placing the
> advice in issue, the client has opened to examination facts
> relating to that advice.  Advice is not in issue merely because
> it is relevant, and does not necessarily become in issue merely
> because the attorney's advice might affect the client's state of
> mind in a relevant manner.  The advice of counsel is placed in
> issue where the client asserts a claim or defense, and attempts
> to prove that claim or defense by disclosing or describing an
> attorney client communication. . . .

Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,  32 F.3d 851, 863 (3d Cir. 1994)

(citations omitted).

3

The plaintiff argues that his reference, in response to interrogatories, to the advice of counsel only as one of a number of reasons that he took no action to set aside the prepetition judgments entered against the debtor by Murphy Oil and Pisces, did not place the advice of counsel at issue in this adversary proceeding.  Moreover, the plaintiff further acknowledges that "he will not assert an 'advice of counsel' defense to Canam Steel and Finloc's counterclaims."  Plaintiff's Supplemental Memorandum, at 3.  Indeed, the plaintiff also "acknowledges that without leave of court for good cause shown, he will not be able to present or offer evidence in support of advice of counsel defense, insofar as the lack of waiver has prevented Canam Steel and Finloc from pursuing discovery on the issue."  Id. at 3-4.

Joining Mr. Miller in opposing production of numerous documents is Delaware Valley Enterprises N.V., f/k/a TCI Environment NV/SA (hereinafter "TCIE"). TCIE has been sued by Canam Steel,[2] which lawsuit, having commenced in 2005, has been removed under 28 U.S.C. § 1452 and is now a proceeding in this bankruptcy case. This removed lawsuit asserts that Canam Steel guaranteed a debt owed by TCIE and that Canam Steel repaid that debt rendering TCIE liable to repay the assignee-guarantor, Canam Group.  The plaintiff, George Miller, is the subject of counterclaims and third-party claims in the above-captioned adversary proceeding involving, inter alia, his control of TCIE stock and his actions relating to management and operations of TCIE.

TCIE, through its own counsel, now asserts that the documents identified as privileged by the plaintiff concern information provided to, or advice given by, attorneys

---

[2]Canam Group has since been substituted for plaintiff Canam Steel in the litigation against TCIE.

for TCIE and attorneys for the plaintiff in connection with claims involving TCIE and are

thus protected by the joint-defense privilege and/or the control group attorney-client

privilege.

I shall decide the issues of privilege and waiver against the following

backdrop.

The Supreme Court has described the federal common law attorney-client

privilege in the following manner:

> The attorney-client privilege is the oldest of the privileges for
> confidential communications known to the common law. 8 J.
> Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its
> purpose is to encourage full and frank communication
> between attorneys and their clients and thereby promote
> broader public interests in the observance of law and
> administration of justice. The privilege recognizes that sound
> legal advice or advocacy serves public ends and that such
> advice or advocacy depends upon the lawyer's being fully
> informed by the client. As we stated last Term in Trammel v.
> United States, 445 U.S. 40, 51 . . . (1980): "The lawyer-client
> privilege rests on the need for the advocate and counselor to
> know all that relates to the client's reasons for seeking
> representation if the professional mission is to be carried out."
> And in Fisher v. United States, 425 U.S. 391, 403 . . . (1976),
> we recognized the purpose of the privilege to be "to
> encourage clients to make full disclosure to their attorneys."
> This rationale for the privilege has long been recognized by
> the Court, see Hunt v. Blackburn, 128 U.S. 464, 470 . . .
> (1888) (privilege "is founded upon the necessity, in the
> interest and administration of justice, of the aid of persons
> having knowledge of the law and skilled in its practice, which
> assistance can only be safely and readily availed of when free
> from the consequences or the apprehension of disclosure").

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (citations omitted).[3]

      The Third Circuit Court of Appeals reiterated the scope of the federal

common law privilege involving attorney-client communications:

> The traditional elements of the attorney client privilege that
> identify communications that may be protected from
> disclosure in discovery are:  (1) the asserted holder of the
> privilege is or sought to become a client;  (2) the person to
> whom the communication was made (a) is a member of the
> bar of a court, or his or her subordinate, and (b) in connection
> with this communication is acting as a lawyer;  (3) the
> communication relates to a fact of which the attorney was
> informed (a) by his client (b) without the presence of
> strangers (c) for the purpose of securing primarily either (i) an
> opinion of law or (ii) legal services or (iii) assistance in some
> legal proceeding, and (d) not for the purpose of committing a
> crime or tort;  and (4) the privilege has been (a) claimed and
> (b) not waived by the client.

Montgomery County v. MicroVote Corp., 175 F.3d 296, 301 (3d Cir. 1999); accord, e.g.,

McLaughlin, 3 Weinstein's Federal Rules of Evidence, § 503.10, at 503-14 (2d ed. 1999):

> In sum, a *client* . . . holds a privilege to refuse to disclose, and
> to prevent any other person from disclosing *confidential
> communications* . . . between the client (or his or her
> representatives) . . . and the client's *lawyer* (or certain
> representatives of the lawyer) ... when the communications
> were made to facilitate the rendition of *professional legal
> services* . . . to the client.

(emphasis in original).

---

[3]The parties have assumed that federal common law privileges govern this dispute.  I will make the same assumption.  See In re Columbia Gas Systems Inc., 997 F.2d 1039, 1062 n.13 (3d Cir. 1993) ("All parties assume that if federal common law governs the status of the customer refunds, the same body of law will determine whether the GRI charges and upstream payments are held in trust. We assume without deciding that this is true.").

And "[a]lthough the privilege belongs to the client, and only the client may waive it, an attorney may assert the privilege on the client's behalf. . . .  Moreover, the canons of ethics make the attorney's common law obligation to maintain the secrecy of his communications with his client a professional mandate."  Haines v. Liggett Group, Inc., 975 F.2d 81, 90 (3d Cir. 1992).  In addition,

> [t]he attorney-client privilege is not restricted to the actual communication by the client to the attorney.  The privilege ordinarily extends also to the attorney's response to the client's request for legal advice because such response usually effectively reveals the substance of the client's confidential communication to the attorney.

In re F.A. Potts and Co., 30 B.R. 708, 710 (Bankr. E.D. Pa. 1983) (citing Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977)); accord In re U.S. Healthcare, Inc. Securities Litigation, 1989 WL 11068, at *3 (E.D. Pa. 1989).

In Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414 (3d Cir. 1991), the Third Circuit noted that the attorney-client privilege is designed to "'protect[] only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'"  Id., at 1423-24 (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)).  Therefore, the "voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege."  Id., at 1424.  "Consequently, it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived."  Id., at 1424.

Not every disclosure to a third party of information which would otherwise fall within the scope of the attorney-client privilege results in the waiver of that privilege:

7

> When disclosure to a third party is necessary for the client to
> obtain informed legal advice, courts have recognized
> exceptions to the rule that disclosure waives the
> attorney-client privilege.  For example, courts have held that
> the client may allow disclosure to an "agent" assisting the
> attorney in giving legal advice to the client without waiving
> the privilege. 8 Wigmore, Evidence § 2301 at 583
> (McNaughton rev. 1961); McCormick, Evidence § 92 at 188.
> Courts have also held that the client may disclose
> communications to co-defendants or co-litigants without
> waiving the privilege.  See, for example, Hunydee v. United
> States, 355 F.2d 183, 184-85 (9th Cir. 1965).  These
> exceptions are consistent with the goal underlying the
> privilege because each type of disclosure is sometimes
> necessary for the client to obtain informed legal advice.

Id., at 1424; accord, e.g., Advanced Technology Associates, Inc. v. Herley Industries,

Inc., 1996 WL 711018, at *5 (E.D. Pa. 1996); In re F.A. Potts and Co., 30 B.R. at 711

("When an accountant is consulted by either the attorney or the client in connection with

the seeking or giving of legal advice, such consultation does not vitiate the attorney-client

privilege.").

While it was originally the product of federal common law, see Hickman v.

Taylor, 329 U.S. 495 (1947), the work-product doctrine is now a component of the

federal rules of procedure governing the scope of discovery.  Federal Rule of Civil

Procedure  26 is incorporated into bankruptcy proceedings such as this dispute under

Federal Rule of Bankruptcy Procedure 7026.  Rule 26(b)(3) states in relevant part:

> Trial Preparation:  Materials. Subject to the provisions of
> subdivision (b)(4) of this rule, a party may obtain discovery of
> documents and tangible things otherwise discoverable under
> subdivision (b)(1) of this rule and prepared in anticipation of
> litigation or for trial by or for another party or by or for that
> other party's representative (including the other party's
> attorney, consultant, surety, indemnitor, insurer, or agent)
> only upon a showing that the party seeking discovery has
> substantial need of the materials in the preparation of the
> party's case and that the party is unable without undue

8

> hardship to obtain the substantial equivalent of the materials
> by other means.  In ordering discovery of such materials when
> the required showing has been made, the court shall protect
> against disclosure of the mental impressions, conclusions,
> opinions, or legal theories of an attorney or other
> representative of a party concerning the litigation.

In general, under Rule 26(b)(3), a party may not obtain discovery of documents prepared by counsel in anticipation of litigation or for trial without showing a "substantial need" for these documents.  See Hickman v. Taylor.  "The doctrine is designed to protect material prepared by an attorney acting for his client in anticipation of litigation. . . .  Federal Rule of Civil Procedure 26(b)(3) makes clear, however, the necessity that the materials be prepared in anticipation of litigation, and not 'in the ordinary course of business, or pursuant to public requirements unrelated to litigation.'" United States v. Rockwell Int'l, 897 F.2d 1255, 1265-66 (3d Cir. 1990) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982) (citation omitted).  The Third Circuit has explained that a document is prepared in "anticipation of litigation" even when litigation is not imminent.  The test is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  United States v. Rockwell Intern., 897 F.2d at 1266.  An objective standard is applied.  See, e.g., Advanced Technology Associates, Inc. v. Herley Industries, Inc., 1996 WL 711018, at *6.

The purpose of the work-product doctrine differs from that of the attorney-client privilege.  The latter "promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys.  In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on

9

behalf of attorneys in anticipation of litigation.  Protecting attorneys' work product

promotes the adversary system by enabling attorneys to prepare cases without fear that

their work product will be used against their clients."  <u>Westinghouse Elec. Corp. v.</u>

<u>Republic of Philippines</u>, 951 F.2d at 1428.

      The difference in purpose between the work-product doctrine and the

attorney-client privilege has yielded a different approach to the concept of waiver of the

protection when communication is made to third parties:

> A disclosure to a third party waives the attorney-client
> privilege unless the disclosure is necessary to further the goal
> of enabling the client to seek informed legal assistance.
> Because the work-product doctrine serves instead to protect
> an attorney's work product from falling into the hands of an
> adversary, a disclosure to a third party does not necessarily
> waive the protection of the work-product doctrine.  Most
> courts hold that to waive the protection of the work-product
> doctrine, the disclosure must enable an adversary to gain
> access to the information. . . .
>
> We agree that the purpose of the work-product doctrine
> requires us to distinguish between disclosures to adversaries
> and disclosures to non-adversaries.

<u>Westinghouse Elec. Corp. v. Republic of Philippines</u>, 951 F.2d at 1428 (citations

omitted); <u>accord</u>, <u>e.g.</u>, <u>Cooper Hospital/University Medical Center v. Sullivan</u>, 183 F.R.D.

119, 128 (D.N.J. 1998) ("Westinghouse draws a distinction 'between disclosures to

adversaries and disclosures to non-adversaries. . . .  Disclosures to non-adversaries do not

waive the privilege . . . .); <u>Advanced Technology Associates, Inc. v. Herley Industries,</u>

<u>Inc.</u>, 1996 WL 711018, at *6.

      In addition to the work-product doctrine and the attorney-client privilege,

the plaintiff and TCIE have raised the "common interest privilege," also known as the

"joint defense privilege."  <u>See</u> <u>generally</u> <u>In re Megan-Racine Associates, Inc.</u>, 189 B.R.

562, 570 n.4 (Bankr. N.D.N.Y. 1995).  Although this common law principle seems to

have been first applied in criminal cases, id., 189 B.R. at 571, it has also been utilized in

civil matters.  See, e.g., Eisenberg v. Gagnon, 766 F.2d 770, 787-88 (3d Cir.), cert.

denied, 474 U.S. 946 (1985).  The Third Circuit Court of Appeals has described the

common interest doctrine in the following manner:

> Petitioners assert also that the joint defense privilege applies
> here.  Some explanation of this concept is in order.  The
> attorney-client privilege protects confidential communications
> made to an attorney in his or her professional capacity, in
> those instances in which a strict relation of attorney and client
> exists. . . .  This protection has been extended to
> communications between different persons or separate
> corporations when the communications are "part of an
> on-going and joint effort to set up a common defense
> strategy."  Eisenberg v. Gagnon, 766 F.2d 770, 787 (3d Cir.),
> cert. denied, 474 U.S. 946 . . . (1985).  "In order to establish
> the existence of a joint defense privilege, the party asserting
> the privilege must show that (1) the communications were
> made in the course of a joint defense effort, (2) the statements
> were designed to further the effort and (3) the privilege has
> not been waived."  Matter of Bevill, Bresler & Schulman
> Asset Management, 805 F.2d 120, 126 (3d Cir. 1986).

Haines v. Liggett Group, Inc., 975 F.2d 81, 94 (3d Cir. 1992); see also United States v.

Doe, 429 F.3d 450, 453 (3d Cir. 2005) ("The common interest privilege allows for two

clients to discuss their affairs with a lawyer, protected by the attorney-client privilege, so

long as they have an 'identical (or nearly identical) legal interest as opposed to a merely

similar interest.'") (quoting F.D.I.C. v. Ogden Corp., 202 F.3d 454, 461 (1st Cir.2000)).

As mentioned earlier, the communication of information covered by

attorney-client privilege may be waived in some instances by its disclosure to a third

party.  Similarly, a party may have to disclose information otherwise within the scope of

the attorney work-product doctrine if an adversarial party has obtained this work product.

11

See Westinghouse Elec. Corp. v. Republic of Philippines.  "The joint-defense privilege acts as an exception to these general waiver rules in order to facilitate cooperative efforts among parties who share common interests."  In re Megan-Racine Associates, Inc., 189 B.R. at 571.

The application of this doctrine requires that the communications be made to a third party "in the course of a joint defense effort."  Matter of Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126 (3d Cir. 1986).  Although this typically will require that all parties to the communication understand its confidential nature and be working toward a jointly held goal, there need not be a written agreement to such effect.  In re Megan-Racine Associates, Inc., 189 B.R. at 571-72.  Furthermore, the common interests of the parties must transcend similar commercial interests and involve common legal interests.  Id., at 573.  "A common legal interest exists where the parties asserting the privilege were co-parties to litigation or reasonably believed that they could be made a party to litigation."  Id., at 573; accord, e.g., Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996).  For example, one court has held that, in the context of the chapter 11 bankruptcy process, given the statutory roles of an official creditors' committee and the debtor in possession these two entities shared a common legal interest when communications among the committee, the debtor and debtor's counsel took place, precluding the waiver of attorney-client privilege.  In re Mortgage & Realty Trust, 212 B.R. 649, 653-54 (Bankr. C.D. Cal. 1997).

It must also be understood that the common interest or joint defense "privilege" is not itself an evidentiary privilege.  Instead, when it applies, it protects from disclosure information that would not otherwise be discoverable.  Thus, it can only be

12

relevant when there is an underlying privilege covering the information sought.  In re Megan-Racine Associates, Inc., 189 B.R. at 571.

Although the joint defense doctrine has been expressly acknowledged within this circuit, its application may overlap with the generally recognized exceptions to the waiver of privileged information by dissemination to third parties previously discussed.  It would appear that a third party holding a common legal interest would not likely be viewed as an "adversary" were that entity to receive attorney work product.  And it is possible that if information subject to attorney-client privilege were communicated as part of a joint defense, such communication could be considered as "made in the course and for the purpose of obtaining legal advice" or as "necessary for obtaining" legal advice.  Advanced Technology Associates, Inc. v. Herley Industries, Inc., 1996 WL 711018, at *5.[4]

The decision Matter of Celotex Corp., 196 B.R. 596 (Bankr. M.D. Fla. 1996), implicitly recognizes this overlap.  That dispute involved an adversary proceeding brought by official creditor committees against various defendants who were insiders of the corporate debtor and who would own 80% of the reorganized debtor under the chapter 11 plan then proposed by the debtor.  The plaintiff committees opposed this plan and had commenced litigation in connection with various transfers between these defendants and

_____

[4]Some courts limit the joint defense doctrine to situations involving actual or potential litigation.  Since the work product doctrine is also applicable only when litigation is anticipated or actually occurring, the overlap of the waiver exceptions to these two doctrines is more complete than the overlap with the waiver principles associated with attorney-client privilege.  This privilege applies to communications in any legal setting, regardless of any anticipation of litigation.  See generally Fischer, The Attorney Client Privilege Meets the Common Interest Arrangement: Protecting Confidences While Exchanging Information for Mutual Gain, 16 Rev. Litig. 631, 663 nn. 28-30 (Summer 1997).

the debtor.  In the course of that adversary proceeding, the plaintiffs sought production of documents prepared postpetition by the debtor's attorneys and financial consultants, and provided to the defendants.  "[T]he documents sought pertain specifically to the formulation of the plan of reorganization proposed by Debtor."  Id., 196 B.R. at 598.

The Celotex court denied the committees' motion to compel production and in doing so rejected the committees' argument that the work-product doctrine and attorney-client privilege associated with these documents had been waived by dissemination to the defendants.  Implicitly, it relied upon the traditional exceptions to waiver of these evidentiary protections from discovery because the documents were all prepared and communicated for the purpose of formulating the legal reorganization strategy.  In addition, the court noted:

> As this Court finds the ten documents in question fit within the more common areas of attorney-client privilege and work product doctrine, the line of cases following Duplan may be outside the scope of this Court's determination.  Nonetheless, Duplan reveals an interpretation of community of interest sufficiently broad to encompass Debtor and Defendants in the case at bar.  In any instance, the Debtor and Defendants share common legal interests in this and the general bankruptcy case--not solely commercial interests (a melange).

Id., 196 B.R. at 600-01.[5]

With this framework for attorney-client privilege, joint defense privilege and work product doctrine in mind, I have reviewed in camera copies of numerous documents claimed as privileged by the plaintiff.  Although there were 148 separately tabbed documents, I note that the plaintiff has represented that some documents have

---

[5]The citation to Duplan refers to Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146 (D.S.C. 1974), which provided an early analysis of the "common interest" doctrine.

14

been provided to the movants,[6] and that, as to others, the movants no longer challenge the plaintiff's assertion of privilege.[7]

Virtually all of the documents asserted to be non-discoverable are copies of e-mail messages. In many instances, those messages became part of a chain and were repeated. A few messages contained attachments. All of the messages appear to concern issues surrounding TCIE that arose after TCI filed its bankruptcy petition including: the plaintiff's administration of this corporate affiliate of the debtor under relevant non-bankruptcy law; the sale of TCIE's assets; the satisfaction of TCIE's debt to Bank of America; the agenda for meetings of directors and shareholders; the minutes of those meetings; the lawsuit brought against TCIE by Canam Steel; and the renaming of TCIE. Some of the attachments are drafts of documents that probably were later filed in court after revision, based upon advice of counsel.[8] None of the documents appear to concern advice to the plaintiff regarding the Murphy Oil or Pisces judgments.

Most of the documents represent communications between the plaintiff and his attorneys, or to or from TCIE's attorneys—typically to or from the plaintiff/and or the directors of TCIE. Some documents involve information communicated by agents acting

---

[6]The documents provided to movants were identified as ##90-91, 105, 113-15, 129, 140, 143, and 146. Movants' response simply lists these documents as no longer challenged.

[7]The documents for which movants' challenge to plaintiff's assertion of privilege has been withdrawn were identified as ##19, 33, 84, 106-12, 117-19, 122-28, 131-36, 138-39, and 148. Movants' response supports this withdrawal.

[8]I shall direct the plaintiff to produce final versions of those attachments to the extent they were filed with third-party entities.

at the request of plaintiff's counsel.  In many instances, copies of messages were sent to

the plaintiff's attorneys or to TCIE's attorneys.

The amended privilege log associated with these documents specifies the

privilege asserted and thus corrects any defect in any earlier privilege log.  See U.S. v.

Union Pacific R. Co., 2007 WL 1500551, at *3-*4 (E.D. Cal. 2007).[9]  Here, the

_____

[9]The issues surrounding movants' challenges to the plaintiff's privilege log were
well-analyzed recently in the following manner:

> Plaintiff requests a determination that defendant has waived its
> right to withhold responsive documents on grounds of privilege,
> given defendant's delay in providing a privilege log in the first
> instance, and the defects in the privilege log ultimately provided by
> the time of hearing.  Defendant provided its initial discovery
> responses on January 8, 2007, without providing a privilege log.
> On January 12, 2007, during a meet-and-confer session and after
> plaintiff's counsel pointed out the lack of a privilege log, defendant
> produced a log, to which plaintiff objected as deficient.  On
> January 30 and again on February 2, 2007, defendant provided an
> amended, superseding privilege log.  Plaintiff continues to object
> that certain required information is not included for certain
> documents identified on the privilege log.  At hearing, plaintiff's
> counsel confirmed that he continues to seek a ruling that defendant
> has waived its privileges.

> It is undisputed that defendant has the burden of establishing its
> right to stand on a privilege as grounds for withholding an
> otherwise responsive document.  In re Subpoena Duces Tecum,
> 439 F.3d 740, 750 (D.C. Cir. 2006).  The Federal Rules for some
> time have required that when a party withholds information on
> grounds of privilege, that party must describe the information with
> sufficient particularity to allow the requesting party to assess the
> applicability of the privilege.  Id. at 750-51 (to meet burden of
> establishing that information warrants withholding, defendant must
> present evidence "sufficient . . . to establish the privilege . . . with
> reasonable certainty" ); Fed. R. Civ. P. 26(b)(5)(A).  The requisite
> detail for inclusion in a privilege log consists of a description of
> responsive material withheld, the identity and position of its
> author, the date it was written, the identity and position of all
> addressees and recipients, the material's present location, and

(continued...)

[9](...continued)

specific reasons for its being withheld, including the privilege
invoked and grounds thereof.  United States v. Construction
Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).  On its
face, Rule 26 does not require that a requesting party ask for a log
of claimed privileges, if one has been prepared; rather it is the
responding party's duty to offer one.  In evaluating whether a
waiver should be found when a party does not provide a privilege
log at the same time that responsive information is produced, a
court uses the initial due date for a response as a "default
guideline," while making a "case-by-case determination," taking
into account the following factors:

the degree to which the objection or assertion of privilege enables
the litigant seeking discovery and the court to evaluate whether
each of the withheld documents is privileged (where providing
particulars typically contained in a privilege log is presumptively
sufficient and boilerplate objections are presumptively
insufficient); the timeliness of the objection and accompanying
information about the withheld documents (where service within
30 days, as a default guideline, is sufficient); the magnitude of the
document production; and other particular circumstances of the
litigation that make responding to discovery unusually easy (such
as, here, the fact that many of the same documents were the subject
of discovery in an earlier action) or unusually hard.  Burlington
Northern & Santa Fe Rwy. Co. v. U.S. Dist. Court, 408 F.3d 1142,
1149 (9th Cir.), cert. denied, — U.S. —, 126 S. Ct. 428, 163
L.Ed.2d 326 (2005).  The determination should reflect a "holistic
reasonableness analysis, intended to forestall needless waste of
time and resources, as well as tactical manipulation of the rules and
the discovery process."  Id.  While taking account of applicable
local rules and stipulations by the litigants, the exercise is not "a
mechanistic determination of whether the information is provided
in a particular format."  Id.

In Burlington Northern, the responding party, a sophisticated
corporation like defendant here, was found to have waived its
privileges when it provided a privilege log five months after its
initial responses to discovery requests were due.  Id. at 1149-50.
Here, where defendant provided an initial privilege log within four
days of its initial production, and amended logs in less than a
month, the court declines to make a finding of waiver.  Defendant
is cautioned, however, that the determination made in this instance

(continued...)

plaintiff's correction of his privilege log was sufficiently prompt as to avoid a waiver of all privilege.

Furthermore, upon my review of this amended privilege log, while one may debate whether every document is indeed protected by all of the privileges identified on the log by the plaintiff, I agree that, except for the following, the documents fall within the scope of attorney-client privilege, work product protection, and/or the common interest privilege involving third-party communications.  The documents that must be produced as not protected by any privilege are:

> Document #7—plaintiff need produce **only** that portion of the document which is a copy of an e-mail from Vertommen to Miller dated 10/27/04 concerning Fortes Bank involved in the potential sale of TCIE.  No attorney-client privilege is involved in this issue.[10]

> Document #17—plaintiff need produce **only** that portion of the document which is a copy of an e-mail dated 9/26/06 from Herschman to Coren.  No attorney-client privilege is involved with that communication from Canam Steel counsel to plaintiff's counsel.

> Document #21—plaintiff need produce **only** that portion of the document which is a copy of an e-mail dated 4/28/06 from Rice to Meersseman.[11]  No attorney-client privilege is involved with that communication regarding the TCIE Board Meeting between directors simply because a copy was sent to TCIE counsel.

---

[9](...continued)
is not a license to take as long in the future to provide an appropriately detailed log.

U.S. v. Union Pacific R. Co.,  2007 WL 1500551, at *3-*4.

[10]Documents ##9 and 10 are duplicative of #7.

[11]This appears duplicated in document #85.

Documents ##23 & 24—plaintiff need produce **only** that
portion of the documents which are copies of e-mails dated
1/10/06 and 1/6/06 from Miller to Meersseman.  The opinions
of Miller expressed therein are not protected by attorney-
client privilege.[12]

Document #57—plaintiff need produce **only** that portion of
the document which is a copy of an e-mail dated 1/9/06 from
Miller to Rice involving tax payments.

Document #61—plaintiff need produce **only** that portion of
the document which are copies of e-mails dated 5/1/06 from
Rice to Meersseman and from Meersseman to Rice; and dated
4/29/06 from Rice to Meersseman.[13]

In so finding, I agree with the plaintiff and TCIE that the communications

between the plaintiff and TCIE's counsel, or between plaintiff's counsel and TCIE, or

between plaintiff's counsel and TCIE's counsel, were part of a common defense to the

claims made by Canam Steel against TCIE and Miller, or involve Miller's control of

TCIE that are being challenged by Canam Steel or its assignee.  I further agree with

plaintiff that certain documents are covered by the work-product doctrine and were never

revealed to adverse parties.

Finally, while none of the documents reviewed <u>in camera</u> involved advice

from Mr. Miller's attorneys regarding setting aside the Pisces or Murphy Oil judgments,

in the interest of completeness I conclude that the plaintiff did not waive attorney-client

privilege in his response to interrogatories.  However, at trial, he will not be permitted to

assert an advice of counsel defense to the counterclaims and third-party claims made

---

[12]This e-mail is replicated in document #34.

[13]Duplicated in documents ##86 and 87.

19

against him.  <u>See</u> <u>Smithkline Beecham Corp. v. Apotex Corp.</u>, 2005 WL 2436662, at *4-

*5 (E.D. Pa. 2005).

     And appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| TOTAL CONTAINMENT, INC. | : | |
| Debtor | : | Bankruptcy No. 04-13144bif |

_____

| | | |
|---|---|---|
| GEORGE L. MILLER, Chapter 11 trustee | : | |
| Plaintiff | : | |
| v. | : | |
| MARCEL DUTIL, et al. | : | |
| Defendants | : | Adversary No. 05-0145 |

_____

.............................................................

ORDER

.............................................................

AND NOW, this 18th day of June 2007, for the reasons stated in the accompanying memorandum, it is hereby ordered that defendants Canam Steel Corporation and Finloc, Inc.'s motion to compel is denied in large part, as follows:

1. The plaintiff need only supplement his answers to movants' interrogatories as agreed in his supplementary memorandum at 4, n.1;

2. Plaintiff shall produce to movants within ten days copies of those documents identified above as not privileged; and

3. Plaintiff shall also produce to movants within ten days (if he has not previously done so) final copies of Miller affidavits, as well as final copies of TCIE

corporate documents referred to in his privilege log, if such documents were filed with

any court or governmental agency (including foreign governmental agencies).


_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Phillip E. Wilson, Esquire
Piper Rudnick
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Mark J. Friedman, Esquire
Anthony P. Ashton, Esquire
DLA Piper US LLP
6225 Smith Avenue
Baltimore, MD 21209

Craig Martin, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street
Wilmington, DE 19801

Steven M. Coren, Esquire
David Dormont, Esquire
Kaufman, Coren & Ress, P.C.
1717 Arch Street, Suite 3710
Philadelphia, PA 19103