UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :       Chapter 11

TOTAL CONTAINMENT, INC.                         :

              Debtor                            :       Bankruptcy No. 04-13144bif
_____

GEORGE L. MILLER, Chapter 11 trustee    :

              Plaintiff                         :

       v.                                       :

MARCEL DUTIL, et al.                            :

              Defendants                        :       Adversary No. 05-0145
_____


...........................................................

MEMORANDUM

...........................................................

       Presently before me is a summary judgment motion filed by the plaintiff,

George L. Miller, in his capacity as counterclaim defendant, third-party defendant and

third-party plaintiff.  In addition, a motion for summary judgment was filed by third-party

defendants Andre Marsan and Groupe Conseil Marsan, Inc.  These two summary

judgment motions are opposed.  As will be discussed, the claims at issue have been

narrowed by agreement of the parties.

I.


       The plan administrator, Mr. George L. Miller, who is the former chapter 11

trustee in the above-captioned case, had filed an amended complaint asserting seven

causes of action against eleven defendants, and seeking a total of $23 million in damages as well as declaratory relief.  Among those claims, Mr. Miller averred that the individual defendants wrongfully caused the debtor, Total Containment, Inc. ("TCI") to fail to defend against prepetition lawsuits brought by Murphy Oil USA, Inc. and PISCES OPW, Inc., purportedly causing damage to the debtor in excess of $5 million.  Id., ¶¶ 35-46.

In response to Mr. Miller's amended complaint, the individual defendants, as well as some corporate defendants, raised numerous counterclaims.  In addition, they asserted third-party claims against Mr. Miller in his individual capacity.  These counterclaims and third-party claims can be placed into four groups.

First, defendants Winston Towers 1988, Inc., Canam Group, Inc.,[1] Marcel Dutil, Bernard Gouin, Pierre DesJardins, Jay Wright, and Finloc, Inc. averred that the former trustee, in both his official and individual capacities, acted negligently and breached his fiduciary duty in failing to timely raise a claim under a prepetition insurance policy (a "D&O First" Policy) issued to TCI by American International Specialty Lines Insurance Company, with policy number 320-83-57 and with a policy period from May 31, 2003 until May 31, 2004.

Second, these same defendants claimed that the former trustee acted negligently and breached his fiduciary duty, in both his official and individual capacities, by failing to move to vacate or set aside the prepetition judgments entered against TCI by PISCES and Murphy Oil.

Third, the same defendants alleged that the former trustee acted negligently and breached his fiduciary duty, in both his official and individual capacities, by his post-

---

[1]As successor in interest to defendant Canam Steel Corp.

petition conduct in selling two facilities of TCI (one located in Bakersfield, California, and the other located in Oaks, Pennsylvania). These defendants maintain that the trustee's actions failed to achieve the best price available.

And fourth, these same defendants averred that the former trustee, Mr. Miller, should be held liable, in both his official and individual capacities, in his exercise of control over TCI's affiliate company, Delaware Valley Enterprises NV, formerly known as TCI Environment NV/SA ("TCIE"). TCI held 99% of the outstanding shares of TCIE, which shareholder interest became part of the TCI bankruptcy estate controlled by Mr. Miller. In his exercise of that control, Mr. Miller appointed two new corporate directors and purportedly authorized a dividend payable from TCIE to TCI.

Defendant Canam Group, Inc. asserts among its counterclaims that it is a creditor of TCIE and that Mr. Miller, in his official capacity as trustee, authorized a fraudulent transfer of assets from TCIE to TCI while TCIE was insolvent. This transfer was improper as Mr. Miller should not have authorized any TCIE distribution to shareholder TCI until TCIE creditors were repaid in full.

In addition, defendants Winston Towers 1988, Inc., and Canam Group, Inc., aver that Mr. Miller appointed two TCIE directors who were unqualified and who were paid excessive compensation. For example, defendant Winston Towers 1988, Inc. alleges in paragraphs 11-12, 69-71 of its counterclaims and third-party claims:

> 11. As the majority shareholder of TCIE, at the annual meeting in May, 2004 the Trustee replaced two of the three directors of TCIE, by appointing John R. Peters ("Mr. Peters"), the Trustee's next-door neighbor, and John B. Rice ("Mr. Rice"), the Trustee's personal attorney and whose firm is also presently representing the Trustee's accounting firm, Miller, Coffey Tate. Neither had any relevant industry

experience and neither was qualified to oversee the affairs of TCIE.

12. Nevertheless, following the appointment of Mr. Peters and Mr. Rice to the TCIE board, the Trustee caused TCIE to pay each of his appointed directors a monthly fee of €1,500. In March, 2006, the monthly director fee for each was increased to €3,500.

69. Further, Mr. Miller's administration of the estate's controlling interest in TCIE also fell below the standard of care. As the Chapter 11 Trustee for TCI, Mr. Miller had the duty to exercise the rights and responsibilities as the controlling shareholder of TCIE, which stock was a principal asset of TCI. Mr. Miller appointed friends and cronies as directors of TCIE board who collected substantial director fees from TCIE. However, these directors lacked the experience and skills to provide the appropriate supervision over TCIE management, and therefore, the TCIE board did not function properly. Thus, TCIE's payment of the directors fees was an unnecessary expenditure of its resources which should have been available to pay TCIE creditors or for distribution to TCI following the satisfaction of TCIE's creditors.

70. As a consequence of Mr. Miller's failure to properly exercise the rights and responsibilities of the controlling shareholder of TCIE through the appointment and payment of unqualified directors, TCIE was unnecessarily depleted of the cash that was paid to the directors appointed by Mr. Miller. These funds should have been available to satisfy the obligations of TCIE to its creditors, and after satisfaction of its creditors for distribution to the TCI estate.

71. As the Chapter 11 Trustee for TCI, Mr. Miller had a duty to exercise reasonable diligence and care in the performance of his duties on behalf of the TCI estate. Mr. Miller's duty to exercise reasonable diligence and care in the performance of his duties on behalf of the TCI estate extended to creditors such as Winston Towers.

In response to the factual and legal assertions made against him by the various defendants, Mr. Miller denied appointing unqualified directors of TCIE, denied wrongfully conveying any TCIE assets, and denied breaching any fiduciary duties or

4

acting negligently with respect to the D&O insurance policy, the PISCES and Murphy Oil judgments, the sale of the two TCI facilities or via conduct as majority shareholder of TCIE.

In addition to these denials, Mr. Miller asserted a third-party complaint against Mr. Andre Marsan and Group Conseil Marsan, Inc.  In this third party complaint, Mr. Miller alleged that, prior to TCI's bankruptcy filing on March 4, 2004, both defendants were "in charge of, and made decisions related to, the day to day operations of TCI in conjunction with the TCI Board of Directors, and other insiders and their affiliates. . . ."  Complaint, ¶ 13.  In failing to take any action to vacate the PISCES and Murphy Oil judgments against TCI, Mr. Marsan and Group Conseil Marsan allegedly violated their fiduciary duties to TCI and were negligent.  Mr. Miller then asserted that these two third-party defendants were liable to him in contribution or indemnity to the extent he was liable to the counterclaiming defendants.  Third-Party Complaint, ¶¶ 27, 33. Mr. Miller also raised similar contribution or indemnity claims against Marsan and Group Conseil Marsan concerning the counterclaims and third party claims made against him involving the sale of the two TCI facilities.  Mr. Marsan and Group Conseil Marsan responded to Mr. Miller's complaint by denying all liability over to Mr. Miller.

Thereafter, Mr. Miller and the various defendants and third-party defendants undertook discovery and ultimately entered into a stipulation dismissing the following counterclaims and third-party claims: the claims involving the PISCES judgment; and the sale of the two TCI facilities.  (See docket entry # 227.)  Moreover, all parties agreed that the counterclaims and third-party claims involving the D&O policy were rendered moot by the insurance company's acceptance of the individual director's

claims under the D&O policy, as well as my ruling on September 26, 2007, which ruling permitted the director and officer defendants to use the proceeds of that D&O policy.

Accordingly, there are relatively few counterclaims and third-party claims still outstanding.  Mr. Miller now seeks summary judgment as to all those remaining claims, except as to the fraudulent conveyance claim raised against him by Canam Group, Inc.  Therefore, the only counterclaims and third-party claims remaining for possible resolution via summary judgment are the negligence and breach of fiduciary duty claims lodged against Mr. Miller in his representative and individual capacities as the former chapter 11 trustee of TCI involving his failure to seek to vacate the prepetition judgment against the debtor by Murphy Oil, and concerning his selection of Messrs. Rice and Peters as corporate directors of TCIE and the alleged payment to them of excessive compensation.

Mr. Marsan and Groupe Conseil Marsan, Inc. have also demanded entry of summary judgment on the indemnity and contribution claims lodged against them by Mr. Miller.  Of those four claims—involving the sale of the two facilities and the PISCES and Murphy Oil judgments—the trustee has agreed to dismiss all but the Murphy Oil related claim.  And that remaining third-party claim can only survive if Mr. Miller is denied summary judgment.

II.

Federal Rule of Bankruptcy Procedure 7056 incorporates Fed. R. Civ. P. 56, the summary judgment rule, into bankruptcy adversary proceedings.  Summary

judgment avoids the expense and delay of an unnecessary trial when no material facts are

in dispute and one of the parties is entitled to prevail on the merits.  See, e.g., Goodman v.

Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038

(1977).  The standard for determining the applicability of summary judgment under Rule

56 is well established.  As the Third Circuit Court of Appeals observed:

> Summary judgment is appropriate when the moving party is
> entitled to judgment as a matter of law and there is no genuine
> dispute of material fact. . . .  In order to defeat "a properly
> supported summary judgment motion, the party opposing it
> must present sufficient evidence for a reasonable jury to find
> in its favor."  Groman v. Township of Manalapan, 47 F.3d
> 628, 633 (3d Cir. 1995) (citing Anderson v. Liberty Lobby,
> Inc., 477 U.S. 242, 250-52, 106 S. Ct. 2505, 2511-12, 91 L.
> Ed. 2d 202 (1986)).  In essence, the non-moving party must
> demonstrate a dispute over facts that might affect the outcome
> of the suit.  Id.  Moreover, in reviewing the record, we must
> give the non-moving party the benefit of all reasonable
> inferences. . . .

Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir. 1996).

The application of these general principles is affected by the allocation of

the evidentiary burden of persuasion were the dispute to proceed to trial.  That is, a trial

court's approach to summary judgment is influenced by whether the party seeking

summary judgment would have the burden of persuasion at trial.  See generally

Coquellette, et al. 11 Moore's Federal Practice 3d, §§ 56.03[4], 56.13[3] (2006).  This

approach was well summarized in Adams v. Consolidated Rail Corp., 1994 WL 383633,

at *1-*2 (E.D. Pa. 1994):

> The Supreme Court articulated the allocation of burdens
> between a moving and nonmoving party in a motion for
> summary judgment in Celotex Corp. v. Catrett, 477 U.S. 317
> (1986).  The Court held that where the movant is the
> defendant, or the party without the burden of proof on the
> underlying claim, the movant still has the initial burden of

7

showing the court the absence of a genuine issue of material
fact, but that this does not require the movant to support the
motion with affidavits or other materials that negated the
opponent's claim. Id. at 323.  In contrast, where, as here, "the
party moving for summary judgment is the plaintiff, or the
party who bears the burden of proof at trial, the standard is
more stringent." National State Bank v. Federal Reserve
Bank, 979 F.2d 1579, 1582 (3d Cir. 1992).  To sustain its
initial burden under such circumstances, the movant must:

> "support its motion with credible evidence . . .
> that would entitle it to a directed verdict if not
> controverted at trial.  In other words, the
> moving party must show that, on all the
> essential elements of its case on which it bears
> the burden of proof at trial, no reasonable jury
> could find for the non-moving party."

> Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir.
> 1993). . . .  If the movant makes such an affirmative showing,
> it is entitled to summary judgment unless the nonmoving
> party, in response, comes forward with significant, probative
> evidence demonstrating the existence of a triable issue of
> fact[.]

(citations omitted); accord In re White, 243 B.R. 498, 501 n.4 (Bankr. N.D. Ala. 1999).

Thus, "[w]hen, as here, the nonmoving party bears the burden of persuasion

at trial, the moving party may meet its burden on summary judgment by showing that the

nonmoving party's evidence is insufficient to carry that burden.  The nonmoving party

creates a genuine issue of material fact if he provides sufficient evidence to allow a

reasonable jury to find for him at trial." Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir.

1998).

As noted earlier, in applying the above-mentioned standard for summary

judgment, "[the court must] view the underlying facts and all reasonable inferences

therefrom in the light most favorable to the party opposing the motion." Pennsylvania

Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); see also Wetzel v. Tucker, 139

F.3d at 383 n.2; <u>Helen L. v. DiDario</u>, 46 F.3d 325, 329 (3d Cir.), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u>
<u>Pennsylvania Secretary of Public Welfare v. Idell S.</u>, 516 U.S. 813 (1995); <u>Valhal Corp.</u>
<u>v. Sullivan Associates, Inc.</u>, 44 F.3d 195, 200 (3d Cir. 1995); <u>Goodman v. Mead Johnson</u>
<u>& Co.</u>, 534 F.2d at 573.  Moreover, the moving party bears the burden of proving that no
genuine issue of material fact is in dispute.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith</u>
<u>Radio Corp.</u>, 475 U.S. 574, 586 n.10 (1986).  Once the movant has carried its initial
burden, however, the nonmoving party "must come forward with 'specific facts showing
that there is a genuine issue for trial.'"  <u>Id.</u> at 587 (quoting Fed. R. Civ. P. 56(e)).  As
explained by the Third Circuit:

> At the summary judgment stage of proceedings, if the movant
> —in this case the Defendants—can point to the absence of
> any factual support for one of [the] essential elements [of the
> complaint], then the non-movant, bearing the burden of
> persuasion at trial, must introduce specific facts showing a
> need for trial, pursuant to Fed. R. Civ. P. 56(e).  <u>See</u> <u>Celotex</u>,
> 477 U.S. at 322-24, 106 S. Ct. 2548.  If the non-moving party
> fails to go beyond conclusory allegations in its pleadings and
> to produce specific facts indicating that there is a genuine
> issue for trial, summary judgment will be granted in favor of
> the moving party.

<u>Annulli v. Panikkar</u>, 200 F.3d 189, 198-99 (3d Cir. 1999) (overruled on other grounds by
<u>Rotella v. Wood</u>, 528 U.S. 549 (2000)) (citations omitted).


III.


In applying this standard, I shall first consider the counterclaims and third-
party claims against Mr. Miller arising from the prepetition Murphy Oil prepetition state
judgment against TCI.

In Mr. Miller's amended complaint, he asserts that, by order dated March 1, 2004, the state court entered judgment in the amount of $4 million in favor of Murphy Oil as a sanction for TCI's willful failure to comply with an order compelling discovery. Amended Complaint, ¶ 53.  TCI filed a voluntary petition in bankruptcy on March 4, 2004, less than thirty days from the entry of this order.[2]  The counterclaim defendants complain that Mr. Miller should have taken prompt steps to vacate or set aside that sanctions judgment.  And they seek damages against him for his failure to do so.[3]

Mr. Miller counters that he was unlikely to be successful in vacating this default order and made a reasoned decision not to try.  Based upon conversations he had with various attorneys (who did not represent him), he contends that he would be unable to demonstrate a reasonable explanation for the entry of the Murphy Oil sanction against TCI, because his investigation led him to conclude that TCI purposely did not comply with Murphy Oil's discovery requests as part of a stratagem undertaken by the defendants.  Moreover, he maintains that either he had no unencumbered funds with which to prosecute such an action or, if he did, that it would be an unreasonable expenditure of such funds.

---

[2]Miller's third-party complaint against the Marsan defendants suggests that the Murphy Oil judgment was entered in state court on February 10, 2004.  Complaint, ¶ 19. Actually, the state court order was dated February 10, 2004, but not entered until March 1, 2004. See Miller's Ex. AA; Claims Docket No. 11, Ex. A; Marsan Motion for Summary Judgment, Ex. 6.

Thus, there is no dispute that the judgment order was entered in state court prior to TCI's bankruptcy filing on March 4, 2004 and that entry of this order occurred within 30 days of the commencement of the bankruptcy case.

[3]The Murphy Oil related counterclaims and third-party claims are as follows: Winston Towers1988 counterclaims V-VIII: Canam Group counterclaims VI-IX; Dutil, Gouin and DesJardins counterclaims V-VIII; Jay Wright counterclaims and third-party claims III-IV; Finloc, Inc. counterclaims V-VIII.

The Marsan defendants, relying upon the deposition of Mr. Marsan, maintain that they had no responsibility for managing or overseeing litigation against TCI.  They also contend that the span between entry of the Murphy Oil sanctions order and appointment of the bankruptcy trustee was too brief for action to be taken by them.

In seeking summary judgment on the claims involving Murphy Oil's prepetition sanctions order, Mr. Miller relies upon his own deposition testimony as well as  upon the "expert report" of Gary F. Seitz, Esq., an individual appointed by the United States trustee as a bankruptcy trustee in numerous cases in this district.  Miller, Ex. A.  Mr. Seitz opined as follows:

> The likelihood of opening these judgments [in favor of PISCES and Murphy Oil] was severely hampered by the Debtor's prior directors knowingly ignoring and flaunting state and federal court orders despite legal advice recommending a different course of action.  The directors permitted the entries of the default judgment as part of a strategy to hinder and delay its creditors. . . .  By acting in a calculated, deliberate and intentional manner, the directors' conduct vitiated proof of any excusable neglect needed to seek relief from the judgment.
>
> ***
>
> The directors' intentional wrongdoing leading to the judgments was such that the Trustee was unable to provide a reasonable explanation or excuse for the delay that led to the entry of the judgments—without which the Trustee could not prevail in any further litigation to open the judgments.

Miller, Ex. A at 22-23.

The counterclaim defendants challenge Mr. Seitz's reasoning, relying primarily upon an opinion letter written by former state court judge Abraham J. Gafni, who opined that as the Murphy Oil plaintiff had sued TCI in tort, the state trial court erred in failing to hold a damage hearing prior to entering the discovery sanctions order, and

thus the $4 million judgment was defective and open to challenge. Defendants' Ex.11 at 4[4]; see generally Pa. R. Civ. P. 1037.

In general, if a default judgment is taken against a defendant, Pennsylvania law provides two distinct methods for setting aside that judgment. State law distinguishes between striking or opening the judgment. A judgment will be stricken only if a defect in the judgment, such as a defect in service, is apparent on the face of the record. No extrinsic evidence may be offered to demonstrate that defect. See Dubrey v. Izaguirre, 454 Pa. Super. 504, 509-10 (1996):

> A petition to strike a judgment does not involve the discretion of the court . . . . Instead, it acts as a demurrer to the record and, as such, may be granted only when "a fatal defect in the judgment appears on the face of the record." . . . Therefore, to grant a petition to strike a judgment based upon improper service, the court must be unable to find proper service, reviewing only the record as it existed when judgment was entered.

(citations omitted); accord Cintas Corp. v. Lee's Cleaning Services, Inc., 549 Pa. 84, 93 (1997); City of Philadelphia v. Campbell, 32 Pa. Commw. 166 (1977) (default judgment is stricken because of a defect in service apparent in the affidavit of service).

Conversely, if there is no defect apparent upon examination of the record, then a defendant may seek to open a default judgment by presenting extrinsic evidence.

---

[4]Former Judge Gafni concluded that no evidence of damages was presented from the absence of any affidavit attached to Murphy Oil's sanctions motion, from Mr. Miller's deposition (which simply stated that he did not know if any evidence regarding damages was offered, Defendants' Ex. 5, at 25-27; Ex. 7, at 49, 64) and because the February 10, 2004 state court order made reference to a demand in the complaint but there was no liquidated damage claim in the complaint. Defendants' Ex. 11, at 4.

I do not find the record undisputed on this point. That is, there is no document, affidavit or transcript that clearly demonstrates whether Murphy Oil did or did not offer any evidence in support of its discovery sanctions judgment.

See, e.g., Liquid Carbonic Corp. v. Cooper & Reese, Inc., 272 Pa. Super. 462 (1979).

However, unless the defect in service is such as to give rise to a due process violation, in

order to open a judgment the defendant must demonstrate a reasonable explanation for the

entry of the default, some likelihood of a meritorious defense, and prompt action once the

entry of default is known.  See, e.g., Cintas Corp. v. Lee's Cleaning Services, Inc., 549

Pa. at 93-94;  PNC Bank, N.A. v. Unknown Heirs, 929 A.2d 219, 228 (Pa. Super. 2007);

Romeo v. Looks, 369 Pa. Super. 608, 620 (1987); Commonwealth ex rel Schwarz v.

Schwarz, 252 Pa. Super. 95,  99-100 (1977).

To some extent, both the counterclaim defendants and Mr. Miller assume

that this general three-part standard for opening default judgments applies to any attempt

to vacate the Murphy Oil judgment.  Mr. Miller argues that he could not offer a

reasonable explanation for the entry of the sanctions order, as he believes the failure to

provide discovery was done willfully by TCI.  And the defendants assume that Mr.

Miller's failure to act promptly, after he was appointed trustee, now precludes any relief

from the state court.  As former Judge Gafni observed though, relief from the state court

entry of default judgment as a discovery sanction is not necessarily governed by the three-

part test just detailed.

Pennsylvania Rule of Civil Procedure 4019(c)(3) authorizes a Pennsylvania

trial court to, inter alia, enter a default judgment against a party that has failed to comply

with a discovery order.  See, e.g., Fox v. Gabler, 534 Pa. 185, 189 (1993); Luszczynski v.

Bradley, 729 A.2d 83 (Pa. Super. 1999).  Where the discovery sanction only fixes liability

but not damages, and so is not a final adjudication of the civil action, the sanctioned party

may not file a petition to open the default but may only seek reconsideration within 30

13

days from entry of default.  See, e.g., Edney v. Southeastern Pennsylvania Transportation Authority, 356 Pa. Super. 160, 163 (1986).  If the sanctions order under Rule 4019(c)(3) fully disposes of the litigation, then the defaulted party can appeal within 30 days from entry of the judgment, and the appellate court would consider whether the discovery sanction imposed was appropriate.  See, e.g., Baranowski v. American Multi-Cinema, Inc., 455 Pa. Super. 356, 358 n.2 (1997); Standard Pennsylvania Practice § 34:95 (2007).  The standard of appellate review, however, is abuse of discretion.  See, e.g., Reilly v. Ernst & Young, LLP, 929 A.2d 1193, 1199 (Pa. Super. 2007).

Not addressed by either party, however, is the effect of the provisions of 11 U.S.C. § 108(c) of the Bankruptcy Code on these Murphy Oil sanctions-related counterclaims and third-party claims.  This section states:

> (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

As mentioned earlier, TCI was the subject of state court litigation brought by Murphy Oil.  Murphy Oil obtained a default judgment via sanctions order.  Relief from

that judgment could be sought, under Pennsylvania law, by reconsideration or by appellate review.  The deadline for either action was 30 days from the entry of the judgment.  See Pa. R. App. P. 903(a) and 1701(b)(3)(ii); Witherspoon v. Wal-Mart Stores, Inc., 814 A.2d 1222, 1225 (Pa. Super. 2002) ("As we have repeatedly stated, once a final order or judgment is entered, an appeal must be filed within thirty days or, the trial court must expressly grant reconsideration within thirty days.").

The debtor's bankruptcy petition was filed within 30 days of the entry of the judgment.  Thus, the deadline for seeking reconsideration or filing a notice of appeal had not expired prior to the commencement of this chapter 11 case.  The bankruptcy stay under section 362(a) precluded the chapter 11 debtor (or the trustee) from filing for reconsideration or taking an appeal, as the underlying state court litigation represented a claim against the debtor.  See, e.g., Constitution Bank v. Tubbs, 68 F.3d at 693-94; see generally In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631 (3d Cir. 1998); In re Highway Truck Drivers & Helpers Local Union No. 107, 888 F.2d 293, 298 (3d Cir. 1989); Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448-49 (3d Cir. 1982).  Therefore, by virtue of section 108(c), as the time period for challenge to the Murphy Oil judgment had not expired as of the filing of the bankruptcy petition, that time period for action was extended until 30 days from the termination or expiration of the bankruptcy stay under section 362.  See In re Hoffinger Industries, Inc., 329 F.3d 948, 952-54 (8th Cir. 2003); In re Capgro Leasing Associates,

15

169 B.R. 305 (Bankr. E.D.N.Y. 1994); Citizens National Bank of Evans City v. Gold, 439

Pa. Super. 254 (1995).[5]

No party has sought to terminate the bankruptcy stay concerning the

Murphy Oil judgment.  See generally In re Hoffinger Industries, Inc. (debtor sought relief

from the stay).  Nor has the stay expired.  Although the chapter 11 trustee confirmed a

liquidation plan, paragraph 12.0 of the approved "amended plan of liquidation" dated

November 10, 2005, expressly stated:

---

[5]At oral argument, the counterclaim defendants argued that the provisions of
section 108(b) applied.  Respectfully, I disagree.  As explained by one treatise:

> It is important to note that section 108(b) does not apply to time
> periods in actions against the debtor, or against a codebtor
> protected by the codebtor stay of section 1201 or 1301 of the Code.
> Such actions are stayed by section 362, 922, 1201 or 1301 and may
> proceed only when the stay under the applicable section terminates.
> At that point, the time available is governed by section 108(c),
> which provides at least 30 days to take action when an act or
> proceeding had been stayed.  Thus, when the debtor has a deadline
> for filing an appeal prior to bankruptcy, if the action was originally
> brought against the debtor, the trustee need not meet the 60 day
> time limit of section 108(b) since the action would have been
> stayed by section 362.  There is no need to file pleadings or other
> briefs in a proceeding which has been stayed; section 108(c) will
> be applicable if the stay terminates.  However, section 108(b)
> would probably be applicable to time periods for the trustee to act
> in proceedings against the debtor that are not automatically stayed,
> such as police or regulatory enforcement actions, since section
> 108(c) is intended to deal only with those actions which are stayed
> as a result of the bankruptcy filing.

2 Collier on Bankruptcy, ¶ 108.03[2] at 108-11 (15th ed. rev. 2007) (footnotes omitted).  See
Counties Contracting and Const. Co. v. Constitution Life Ins. Co., 855 F.2d 1054 (3d Cir. 1988)
(section 108(b) applies to a grace period in an insurance contract).
        In this instance, Murphy Oil had brought an action against TCI in state court.
Upon TCI's filing, that action was stayed by virtue of section 362(a), including any appeals from
the prepetition sanctions order.

> 12.0. Term of Bankruptcy Injunction or Stays. Unless
> otherwise provided, all injunctions or stays provided for in
> this Chapter 11 Case under sections 105 or 362 of the
> Bankruptcy Code, or otherwise, and in existence on the
> Confirmation Date, shall remain in full force and effect until
> the dissolution of the Debtor.

As there has been no dissolution of TCI, it appears that the stay currently remains in effect.

Accordingly, the time period for Mr. Miller to act in state court to vacate the Murphy Oil judgment has not expired.  Moreover, if a bankruptcy fiduciary wrongfully fails to act on behalf of the estate, such as filing a valid objection to a claim, a creditor or other party in interest can seek court approval to do so.  See In re Thompson, 965 F.2d 1136, 1147 (1st Cir. 1992) ("As a general rule, absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim.  Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object, notwithstanding a request to do so, and the bankruptcy court permits the creditor to object in the trustee's stead."); see generally Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548 (3d Cir. 2003); In re Elder, 321 B.R. 820, 829 (Bankr. E.D. Va. 2005).[6]

------

[6]Indeed, a provision of the confirmed chapter 11 plan, Amended Chapter 11 Plan of Liquidation, Article IX, ¶ 9.0, provided that "parties in interest" as well as the trustee could object to claims prior to the effective date of the plan.  While this court may have no power to vacate a duly entered order of the state court, see generally In re Knapper, 407 F.3d 573 (3d Cir. 2005); In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997), such a plan provision might be germane in determining whether authority should be granted to a creditor to prosecute a state court appeal from the Murphy Oil judgment at that creditor's expense.

Not presently before me, as Murphy Oil is not a party to this adversary proceeding, is the effect (if any) on possible state court relief in light of proof of claims objections filed after the complaint, counterclaims, and third-party pleading were filed.  Both Mr.

(continued...)

The counterclaims and third-party claims against Mr. Miller concerning the Murphy Oil default judgment assume that the opportunity for the former trustee to seek relief in state court has long passed, and only seek relief on the basis of his failure to timely act. As that assumption is incorrect, and as Mr. Miller or possibly other parties in interest, such as the defendants, are not precluded by virtue of the passage of time from seeking relief from the state court concerning the Murphy Oil judgment, these counterclaims and third-party claims are not ripe for adjudication.  See also Bagoly v. Riccio, 102 Conn. App. 792 (2007) (negligence action against attorney is tolled while the attorney could still mitigate any harm).  Therefore, dismissal of these counterclaims and third-party claims in favor of Mr. Miller and in favor of Mr. Marsan and Group Conseil Marsan are warranted.[7]  See Brubaker v. East Hempfield Tp., 234 Fed. Appx. 32 (3d Cir. 2007); Taylor Inv., Ltd. v. Upper Darby Twp, 983 F.2d 1285 (3d Cir. 1993) (when claim is not ripe, dismissal rather than summary judgment is appropriate).[8]

---

[6](...continued)
Miller, in his capacity as plan administrator, along with Finloc US, Inc and Canam Steel Corporation (predecessor in interest to Canam Group, Inc.)—the latter two acting jointly—filed separate objections to Murphy Oil's unsecured proof of claim in this case.  Mr. Miller reached an accord with Murphy Oil on December 11, 2006, which allowed the claim in the amount of $4 million.  Canam Steel and Finloc withdrew their joint objection on January 9, 2007 "because, under prevailing law, any objection is effectively foreclosed by the Chapter 11 Trustee's failure to move, vacate appeal or take any action in the state court to challenge the judgment obtained prepetition by Murphy Oil. . . ."

[7]Mr. Miller cannot complain of the failure of the Marsan defendants to act when he was and still appears to be free to take the same action.

[8]Therefore, I do not address the numerous issues raised by the various parties that involve the merits of these counterclaims.

IV.

Next, Canam Group, Inc. (in counterclaims X-XIII) and Winston Towers 1988, Inc. (in counterclaims IX-XII) have complained that Mr. Miller, as the representative of TCI (which was the 99% shareholder of TCIE), voted the debtor's shareholder interest to appoint unqualified directors to TCIE's Board and then paid them excessive compensation from TCIE assets.[9]  They seek damages equal to the amount of director compensation paid from May 2004 to these directors, asserting Mr. Miller's liability due to negligence and breach of fiduciary duty, both in his representative trustee capacity and individually.

There appears to be no dispute that TCIE was an entity "organized and existing under the laws of Belgium as a . . . limited liability company."  Miller Ex. TT, Letter of Jan Peeters dated April 16, 2007, at 2.  It was incorporated in August 1992.  Id. TCI held a 99% shareholder interest in TCIE.  Miller Ex. A, at 24.  On March 19, 2004, Mr. Miller was appointed chapter 11 trustee.  See docket entry # 64.  Thereafter and in response to certain director resignations, Mr. Miller arranged to have Mr. John B. Rice and Mr. John R. Peters appointed as directors of TCIE in May or June 2004.  Defendants' Ex. 13, at 29, 34; Miller Ex. A, at 24.  Mr. Rice is a litigation attorney previously known to Mr. Miller, and had represented him in an individual matter.  Id., at 29-30, 32.  Mr.

_____

[9]Canam Group avers that it holds claims against TCIE and the debtor, while Winston Towers contends that it holds a claim only against TCI.  Canam Group also maintains that TCIE is insolvent.  If so, it is not apparent that Winston Towers suffered any harm from Mr. Miller's alleged wrongdoing in using TCIE assets.  I need not resolve this standing issue as Canam Group would still have the right to complain.

Peters is employed as a "certified fraud examiner," id. at 36, has some expertise in

"financial transactions," id., at 37, and is also a neighbor of Mr. Miller.  Id., at 35.  Mr.

Peters was chosen by Mr. Miller because he might be useful in any investigation of

"TCIE and its transactions with other people."  Id., at 37.  Mr. Rice was selected because

Mr. Miller believed that TCIE was involved in various litigation.  Id., at 32.[10]  It is further

undisputed that Mr. Miller, at some unspecified point, approved director compensation

initially at 1,500 euros monthly, and then at some unspecified date increased it to 3,500

euros, with the increase intending to last only until TCIE sold all of its assets.  Id., at 175-

76; Miller's Answers to Interrogatories ## 10, 11 concerning his fee application as

Trustee, dated November 9, 2006:

> Interrogatory No. 10: Describe in detail any factual bases for
> the determination of compensation to be paid to each Director
> of TCIE that you appointed, and in your answer state the
> number of hours per month expended on TCIE business by
> each Director.
>
> Response: Initially, the new directors had no compensation.
> When it became apparent that they would be occupied
> responding to Canam's litigation,[11] they were compensated
> with 1,500 euros a month.  When additional time had to be
> spent with respect to the sale process, their compensation was
> increased to 3,500 euros per month, based upon an estimated
> 8-10 hours of work per month.  The Plan Administrator's
> general impression is that the new directors worked
> substantially more hours than estimated without additional

---

[10]Mr. Miller also arranged for Mr. Frank Frio to be appointed to the TCIE Board
of Directors.  No complaint has been lodged regarding this appointment.

[11]Canam Group and TCIE are involved in litigation that was removed to this court
from the District Court of Maryland.

compensation.  The Plan Administrator objects to discovery
pertaining to events after May 5, 2006.[12]

Interrogatory No. 11: Following the closing on the sale of
TCIE assets to Groep Carpentier,[13] describe in detail the
compensation, if any, the Directors are now receiving and the
amount of time each Director is expending on TCIE matters
each month.

Response: Objection, this interrogatory is not related to the Fee Request
because it relates entirely to potential future events after May
5, 2006.  Without waiver of the above objection, to the best of
the Plan Administrator's knowledge, events relating to the
closing are ongoing, and to the extent there may be post
closing adjustments to compensation those adjustments have
not yet been determined.

Thus, director compensation was authorized by Mr. Miller based upon his

belief that the directors were spending considerable time on TCIE litigation matters, and

this stipend was then increased to compensate directors for time spent concerning the sale

of TCIE's assets.  Id., at 33-34, 176-77.  TCIE is located in Belgium and Mr. Rice has

never traveled to its business location.  Defendants' Ex. 14, at 10.  Mr. Peters has visited

there one time.  Defendants' Ex. 13, at 177.  Mr. Rice cannot read documents written in

Dutch.  Defendants' Ex. 14, at 47.

Defendants Canam Group and Winston Towers also rely on a December

2006 affidavit from Mr. Jan Peeters, an attorney practicing in Belgium who practices in

the fields of "capital market operations . . . , corporate finance, venture capital, mergers

---

[12]This is the date that the trustee's confirmed plan became effective and he ceased
acting as trustee and became Plan Administrator.  As the interrogatories concerned only fees for
his services as trustee, Mr. Miller took the position in these interrogatory answers that post-
effective date events were irrelevant.

[13]On July 6, 2006, this court approved the sale of TCIE's assets to Groep
Carpentier, which order was not opposed by any party in interest.

and acquisitions and financial services regulations." Peeter's Affidavit, ¶ 3. This affidavit was offered to corroborate the corporation liquidation procedure under Belgian law detailed in a pleading filed by Canam Steel Corporation (predecessor in interest to Canam Group as a purported creditor of TCIE) and is now used by the counterclaimants to argue that TCIE should have been officially liquidated either in connection with or immediately after the sale of its assets to Groep Carpentier, thereby ending the need to pay directors.

In seeking summary judgment, Mr. Miller contends that the professional backgrounds of Messrs. Rice and Peters, along with his confidence in their propriety, made them suitable to serve as directors entitled to reasonable compensation for their services. See Miller Ex. A at 24; Miller Reply Ex. A at 10. He notes that TCI compensated its own directors. Miller Ex. BB, at 359-60. A former director of TCIE did not speak Dutch, so Mr. Miller did not consider that language deficiency material. Miller Reply Ex. C, at 33-34. Corporate documents, such as minutes, were routinely translated into English. Id. Moreover, that former director traveled to Belgium only once on TCIE business. Id., at 48.

Mr. Miller further maintains that the counterclaimants failed to meet their evidentiary burden in opposing summary judgment because they did not refer to any evidence that would be presented at trial demonstrating that the two directors were unqualified for their positions or acted improperly as directors. Nor, he notes, did the counterclaimants refer to any evidence that would be presented at trial addressing the reasonableness of compensation paid to directors of entities such as TCIE.

Nonetheless, giving the defendants the benefit of all inferences, and recognizing that in this circuit there is no partial summary judgment for single claims, see Coffman v. Federal Laboratories, Inc., 171 F.2d 94, 98 (3d Cir. 1948), summary judgment on this issue is not warranted.

Even if I accept for summary judgment purposes that it was reasonable for Mr. Miller to arrange for Messrs. Rice and Peters to be appointed TCIE trustees, and even if I accept that they were initially paid reasonable compensation and that this compensation could increase due to director services connected with the TCIE asset sale, there is no evidence when, if ever, the higher compensation ceased—although the sale was approved in July 2006.  Mr. Miller's answer to interrogatories, quoted above, gives rise to the inference that this higher compensation may have continued long past the sale approval date.  Thus, there is a material fact in dispute.  See generally Telxon Corp. v. Meyerson, 802 A.2d 257, 265-66 (Del. 2002); Resolution Trust Corp. v. Gibson 829 F. Supp. 1121, 1128-30 (W.D. Mo. 1993).

There is also no evidence that TCIE was or was not insolvent: a fact that could affect issues of standing, the measure of damages, if any, and the fiduciary duty of Mr. Miller, if any.[14]  Accordingly, Mr. Miller's request for summary judgment as to

---

[14]Indeed, the parties do not address whether Mr. Miller had any fiduciary duty in his individual capacity and, if so, to whom.  They spend time arguing whether the exculpation clause of the confirmed plan applies to these counterclaims and third-party claims against Mr. Miller in his individual capacity.

Previously, I concluded in this chapter 11 case that individual liability of a bankruptcy trustee and plan administrator may be limited to conduct giving rise to "gross negligence" and "willful misconduct."  See generally In re eToys, Inc., 331 B.R. 176 (Bankr. D. Del. 2005); State of Illinois, Dep't of Revenue v. Schechter, 195 B.R. 380, 384 (Bankr. N.D. Ill. 1996).  This standard does not apply to liability of a bankruptcy trustee in his official capacity.

(continued...)

Canam Group, Inc. counterclaims X-XIII and Winston Towers 1988, Inc. counterclaims

IX-XII shall be denied.  An appropriate order will be entered.

_____

[14](...continued)
And if the trustee is liable in his representational capacity, then the estate itself would be liable.
See generally David S. Rogers, as Trustee For Bankruptcy Estate of David G. Ackley v. Virgin
Land, Inc., Ackley Communications, Enterprises, 1996 WL 493174 (D.V.I. 1996).
            It would be inappropriate to consider whether negligence, gross negligence or
willful misconduct has occurred without knowledge of all material facts.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                              :      Chapter 11

TOTAL CONTAINMENT, INC.            :

                Debtor             :      Bankruptcy No. 04-13144bif
_____

GEORGE L. MILLER, Chapter 11 trustee  :

                Plaintiff          :

        v.                         :

MARCEL DUTIL, et al.               :

                Defendants         :      Adversary No. 05-0145
_____


.............................................................

ORDER

.............................................................

AND NOW, this 28th day of January 2008, for the reasons stated in the

accompanying memorandum, it is hereby ordered that the motion for summary judgment

filed by George L. Miller, in his capacity as counterclaim defendant and third-party

defendant, is denied as to Canam Group, Inc. counterclaims X-XIII and Winston Towers

1988, Inc. counterclaims IX-XII.  As to Winston Towers1988 counterclaims V-VIII:

Canam Group counterclaims VI-IX; Dutil, Gouin and DesJardins counterclaims V-VIII;

Jay Wright counterclaims and third-party claims III-IV; Finloc, Inc. counterclaims V-

VIII, those claims were previously dismissed voluntarily regarding the PISCES judgment

and are now dismissed regarding the Murphy Oil sanctions judgment.  All counterclaims

and third-party claims concerning the "D&O First" Policy issued to TCI by American

International Specialty Lines Insurance Company, with policy number 320-83-57 and

with a policy period from May 31, 2003 until May 31, 2004 are, by agreement, dismissed

as moot.

It is further ordered that Counts I and II of the third-party claims brought by

George L. Miller against Andre Marsan and Groupe Conseil Marsan, Inc. concerning the

Murphy Oil sanctions judgment is also dismissed.  (The other third-party claims against

these two third-party defendants were previously dismissed voluntarily.)


_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Steven M. Coren, Esq.
Kaufman, Coren & Ress, P.C.
1525 Locust St.,17th Floor
Philadelphia, PA 19102

Joseph M. Toddy, Esq.
Zarwin, Baum, DeVito, Schaer, Toddy P.C.
1515 Market Street, Suite 1200
Philadelphia, PA 19102

Jeffrey D. Herschman, Esq.
DLA Piper Rudnic Gray Cary US, LLP
6225 Smith Ave
Baltimore, MD 21290

Phillip E. Wilson, Jr., Esq.
DLA Piper Rudnick Gray Cary US, LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Christopher W. Wasson, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Sts.
Philadelphia, PA 19103